IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

LEANN HORNE,                            )
                                        )
                    Plaintiff,          )
                                        )          (WO)
v.                                      )
                                        )   CIVIL ACTION NO.  3:03cv592-A
                                        )
RUSSELL COUNTY COMMISSION, et al.,      )
                                        )
                    Defendants.         )

## MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

This cause is before the court on a Motion for Summary Judgment (Doc. # 124) filed by Defendants Russell County Commission and Russell County, Alabama ("the County Defendants"), a Motion for Summary Judgment filed by Tillman Pugh individually and in his official capacity ("Pugh") (Doc. #132), a Motion to Strike (Doc. #159) and Renewed Motion to Strike (Doc. #176) filed by all Defendants jointly, and a Motion for Leave to File a Corrected and Amended Reply Brief filed by Pugh (Doc. #171).

This court previously granted in part and denied in part Motions to Dismiss the Plaintiff's Complaint.  The Plaintiff, Leann Horne, subsequently filed a Third Amended Complaint.  In her Third Amended Complaint, the Plaintiff brings claims for violation of her due process rights against the County Defendants and her equal protection and due process rights against Pugh pursuant to 42 U.S.C. § 1983 (Count I), violation of 42 U.S.C. §§ 1985, 1986 (Count II), defamation (Count III), assault (Count IV), tort of outrage (Count V), invasion of privacy (Count VI), breach of contract (Count VII), and Title VII and Equal Pay Act claims (Count VIII).

For the reasons to be discussed, the Motions for Summary Judgment are due to be GRANTED in part and DENIED in part.

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Id. at 322-324.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324.  To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  On the other hand, the evidence of

the nonmovant must be believed and all justifiable inferences must be drawn in its favor. See Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## III.  FACTS

The submissions of the parties establish the following facts, viewed in a light most favorable to the non-movant:

Plaintiff Leann Horne ("Horne") is employed by the Russell County Commission and/or Russell County, Alabama as the County Administrator.  Horne alleges that she has endured constant gender based remarks and other demeaning comments from former Commissioner Pugh and Commissioner Mervin Dudley ("Dudley").  She has presented evidence of comments directed to her and comments reported to her by others.  She also has presented evidence that Pugh engaged in threatening conduct.  Horne further contends that the Russell County Commission violated its own policies and procedures and filled an employee position in Horne's office without Horne's knowledge or consent.  Horne eventually filed an EEOC charge and complaint in this court alleging violations of the constitution and various civil rights statutes.

At a July 16, 2003 meeting, the Russell County Commission voted 4 to 3 to place Horne on administrative leave with pay for a renewable 90 day period.  The vote occurred after the County Attorney recommended that Horne be placed on leave because her lawsuit was entering the discovery phase.  The Defendants have presented evidence that the County Commissioners had received reports that Horne was destroying and/or removing evidence relevant to the case.

Horne sought review of her placement on leave from the Russell County Personnel Review Board, but was informed that she was not entitled to review.  Horne was taken off paid administrative leave and allowed to return to work in November 2003.  She is currently employed as the Russell County Administrator.

## IV.  DISCUSSION

The court will first turn to the federal claims brought, and the bases for summary judgment asserted by the County Defendants and Pugh as to those claims, and then will turn to the state law claims and the bases for summary judgment asserted as to those claims.

### A.  Federal Claims

Because violations of different constitutional and statutory provisions have been asserted as to the County Defendants and Pugh, the court will separately address the federal claims asserted.

#### 1.  Federal Claims Against the County Defendants

##### a.  Procedural Due Process

The County Defendants move for summary judgment on the § 1983 due process claim on several bases including that Horne has not demonstrated that state law relief is inadequate and that Horne has failed to present facts to support a "stigma plus" theory.  The court will begin with the latter contention.

In order to prevail on a "stigma plus" due process claim, a plaintiff must establish the following: (1) a false statement, (2) of a stigmatizing nature, (3) attending a governmental employee's discharge, (4) was made public, (5) by a governmental employer, (6) without a

meaningful opportunity for employee name clearing.  Cannon v. City of West Palm Beach, 250 F.3d 1299, 13001 (11th Cir. 2001).

The County Defendants have argued that Horne cannot show that she was discharged or that a false statement was published in connection with her placement on administrative leave. Finally, the County Defendants state that because Horne is a public figure, she cannot show stigma because she must prove actual malice.  See New York Times Co. v. Sullivan, 376 U.S. 254, 283 (1964). The County Defendants state that the only statement made by placing Horne on administrative leave was that she was placed on administrative leave.  The County Defendants further argue that Horne cannot prove the "plus" because she was not terminated, and has not suffered a negative impact on her future job prospects and has actually been sought out for a position.

In response to the argument that Horne cannot establish the "plus" because she was not terminated, Horne relies on a line of cases decided in the context of claims for discrimination on the basis of characteristics protected under the Civil Rights Act of 1964, as amended.  In those cases, as Horne points out, employment actions taken which are short of discharge, but nonetheless are sufficient to be considered adverse employment actions can be the basis for a Title VII claim.  See, e.g., Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239 (11th Cir. 2001).  That does not appear, however, to be the standard to apply in due process cases.

The United States Supreme Court has examined a "stigma plus" claim brought under the Fifth Amendment against a federal official in which there was a publication of information which, without dispute, injured the plaintiff's future employment prospects.  See Siegert v. Gilley, 500 U.S. 226 (1991).  In Siegert, the employee resigned to avoid termination.  The

Supreme Court stated that because the alleged defamation was not uttered incident to his termination, even though the statements made would undoubtedly damage his reputation and impair his employment prospects, there was no constitutional violation.  Id. at 234.

The Eleventh Circuit has recently addressed a stigma plus due process claim in a case in which employees were transferred to another position.  The court stated that "[e]ven assuming Plaintiffs could establish the requisites for defamation, Plaintiffs' retention of employment negates a claim that they were denied their liberty interests."  Silva v. Bieluch, 351 F.3d 1045, 1048 (11th Cir. 2003); see also Cannon, 250 F.3d at 1303 ("in this circuit a 'discharge or more' is required in order to satisfy the 'plus' element of the stigma-plus test.").

The former Fifth Circuit has explained that a significant demotion might present the type of loss of tangible interest connected with stigmatizing state action that could give rise to a liberty interest. Moore v. Otero, 557 F.2d 435 (5th Cir.1977).  In that case, a police corporal was transferred to a patrolman position and the court stated that the stigma plus requirement was not met, but also noted that it might be met had he been transferred to a janitorial position.  Moore, 557 F.2d at 438 n.11.  Although the statement in Moore was dicta, even assuming that such a rule can be applied consistently with the Eleventh Circuit's holdings that a discharge is required, this court cannot conclude that the action taken against Horne rose to the level of a demotion. Her pay was unaffected and she was ultimately reinstated and allowed to perform her job duties.

Horne also relies on Hardiman v. Jefferson County Board of Education, 709 F.2d 635, 639 (11th Cir. 1983), in which the court stated in a footnote that in certain circumstances a prolonged suspension might amount to a significant change of status under state law to implicate a constitutional liberty interest, for instance, "if the government in bad faith suspends an

6

employee for an extended duration in the hope of forcing the employee to resign."   It is not clear

that the dictum in Hardiman is consistent with later Eleventh Circuit holdings in this area.  Even

assuming it is, in light of the evidence that she was reinstated, the court cannot conclude that

Horne's argument that her administrative leave was punitive in nature is sufficient to establish

that the suspension at issue was accomplished to force Horne to resign.[1]

Accordingly, there is insufficient evidence to establish a due process violation in this

case and the Motion for Summary Judgment is due to be GRANTED on Horne's due process

claim.[2]

b. Title VII

Applicability of Statute

The County Defendants argue that Horne is not entitled to the protections of Title VII

because she is not an employee, but instead is a member of the Commission's personal staff.

Title VII defines an employee as an individual employed by an employer except that "the term

'employee' shall not include any person elected to public office . . . or any person chosen by

such officer to be on such officer's personal staff, or an appointee on the policy making level . . .

." 42 U.S.C. 2000e(f).

There are several factors which are helpful in evaluating whether a person falls within the

personal staff exception of Title VII.  They are as follows: (1) whether the elected official has

---

[1] One district court in this circuit has read the Hardiman dicta as standing only for the
proposition that a forced discharge through constructive discharge is sufficient. See Thomas v.
Harvard, 45 F. Supp. 2d 1353 (N.D. Ga. 1999).  Clearly, Horne does not meet that standard.

[2] The County Defendants contend that Horne's claims asserted pursuant to §§ 1985, 1986
are due to be dismissed because this court previously dismissed those claims with prejudice.
Horne does not dispute this point.

plenary powers of appointment and removal, (2) whether the person in the position at issue is personally accountable to only that elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filling the position. Laurie v. Alabama Court of Criminal Appeals, 88 F. Supp. 2d 1334, 1338 (M.D. Ala. 2000), aff'd, 256 F.3d 1266, 1269 (11th Cir. 2001).

The County Defendants contend that Horne is personal staff under this analysis.  Horne disagrees. She argues that she, unlike the staff attorneys in Laurie, did not have an intimate working relationship with the Commission.  She also states that the exception applies to the staff of a public official, not a governing body.

Horne cites the court to Gomez v. City of Eagle Pass, 91 F. Supp. 2d 1000 (W.D. Tex. 2000).  In Gomez, the court determined that the exception for personal staff did not apply to the relationship between the collective members of a city council and a city manager.  The court reasoned that the clear statutory language applies to a person who is the personal staff of a single public official, not a collective body.  Id. at 1006.  The court reasoned that not only is the statutory language unambiguous, but also that it comports with common sense because the exception is grounded on Congress' perception that elected officials need complete loyalty from close staff members.  Id.  The court explained that such close relationships intuitively seem less likely where a group of persons exerts control over a single individual.  Id.

The County Defendants have cited the court to a case which applies the appointed policy maker exception also contained in 42 U.S.C. 2000e (f) to a person appointed by a board.  See Board of County Comm'rs, Freemont Co., Colo. v. E.E.O.C., 405 F.3d 840, 842 (10th Cir. 2005).  Also, in Carlton v. City of Topeka, Kansas, No. 91-2273-JWL, 1993 WL 32780 (D. Kan. Jan. 21, 1993), the court determined that a policy making position appointed by the mayor and approved by the city council was appointed by a public official.  The court relied on an EEOC statement and reasoned that where the mayor and city council were all publicly elected, the position was appointed by public officials.  Although the court did not specifically address the issue at hand in this case, the court apparently found no fault in applying the exception where a collective body was concerned.

The County Defendants have also cited one case which analyzes the issue in question with respect to the personal staff exception of the Fair Labor Standards Act.  In Rodriguez v. Township of Holiday Lakes, 866 F. Supp. 1012, 1022 n.8 (S.D. Tex. 1994), the court stated that the exception seemed to be intended to cover members of a personal staff, and that one court had found that a common sense dictionary reading of the exception leads to the conclusion that it is to apply to staff of a particular person.  The court noted that neither party had argued that the exception did not apply, however, and declined to find that the distinction between being hired by an elected group rather than an individual was significant. Id. The court did not explain why it was applying the exception in a manner inconsistent with the acknowledged plain meaning of the text.

The Eleventh Circuit has pointed out that "[o]ther courts, often citing the legislative history of Title VII, have also concluded that the . . . personal staff exemption . . . is to be

narrowly construed." <u>E.E.O.C. v. Reno</u>, 758 F.2d 581, 584 (11th Cir. 1985).  A district court

within this circuit has examined the personal staff exception and, in holding that an assistant

district attorney is a member of the personal staff of a publicly elected district attorney,

determined that "to reach the result intended by Congress the words of this statutory exception

'must be interpreted in the light of reason and common understanding' . . .  upon 'the assumption

that the legislative purpose is expressed by the ordinary meaning of the words used.'" <u>Wall v.</u>

<u>Coleman,</u> 393 F. Supp. 826, 829 (S.D. Ga. 1975) (citation omitted).

This court concludes that the better-reasoned view is that the statutory exception to the

definition of employee does not apply in this case.  The plain language of the statute does not

encompass persons who serve at the direction of a board or body of public officials.  This court

agrees that limiting the exception to persons who serve at the direction of a single public official

comports with the plain meaning of the language of the exception, is most consistent with the

purpose of the exception, and is most consistent with applying a narrow construction of the

exception.

<u>Claims</u>

The court now turns to the grounds for summary judgment raised as to the merits of

Horne's federal statutory claims of gender discrimination against the County Defendants.[3]

i. Title VII Hostile Work Environment Claim

The County Defendants' first argument is that Horne cannot maintain a hostile

environment claim based on the only event of alleged harassment which falls within 180 days of

---

[3] The Motion to Dismiss filed in this case was granted as to any equal protection claims
against the County Defendants.

the filing of her EEOC charge.  The law regarding timely filing of hostile environment claims is that a "charge alleging a hostile work environment claim, however, will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period."  National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002).

The County Defendants acknowledge this precedent, but contend that the last alleged harassing act was Commissioner Pugh's motion to have Vickie Luckerson placed in the Assistant Administrator position.  Horne contends that the Russell County Commission violated its own policies and procedures and filled an employee position in Horne's office without Horne's knowledge or consent. The County Defendants state that this act is not in the nature of harassing conduct.

In response, Horne states that there were several comments made in the six months prior to the filing of her EEOC charge in May 2003.  Cattie Epps' deposition has also been cited for the proposition that people called in to complain that Pugh talked down to Horne during the March 5, 2003 meeting.  Epps Dep. at page 41:11-15.

Apparently in recognition that Horne has identified some instances of harassment which fall within six months of the EEOC filing date, the County Defendants also contend that Horne cannot rely on instances of alleged harassment which were beyond her personal knowledge and which she only learned of only through others.  In support of this argument, the County Defendants cite to a Seventh Circuit case which stands for the unremarkable proposition that "for alleged incidents of racism to be relevant to showing the severity or pervasiveness of the plaintiff's hostile work environment, the plaintiff must know of them."  Mason v. Southern

11

Illinois University at Carbondale  233 F.3d 1036, 1046 (7th Cir. 2000).  The County Defendants also cite to Caruso v. City of Cocoa, Fla., 260 F. Supp. 2d 1191, 1220 (M.D. Fla. 2003).  The dispositive factor in the Caruso court's analysis, however, was not merely that the plaintiffs did not hear comments directly, but that they had to "ferret out information."  Id.

The court may consider any alleged acts of harassment which were made known to the employee at the time of the alleged creation of a hostile environment, even if she did not hear it directly.  Busby v. City of Orlando, 931 F.2d 764, 785 (11th Cir.1991) (district court abused its discretion in excluding slurs that the plaintiff did not hear or that were not directed toward her); Edwards v. Wallace Community College, 49 F.3d 1517, 1522 (11th Cir.1995).

The County Defendants have also argued that there is not a sufficient connection between the events to establish that they are part of the same hostile environment.  The common connection, however, viewing the evidence in a light most favorable to the non-movant, is Commissioner Pugh and his alleged animus toward Horne on the basis of her gender.  As will be more fully explained below, although not every instance of alleged harassment to which Horne has pointed is explicitly gender-based, the court concludes that the March 2003 meeting during which an employment decision was made without Horne's input was an incident which was part of the overall hostile environment alleged by Horne, so that her hostile environment claim is not time-barred.

A hostile environment claim requires a showing that  (1) the plaintiff is a member of a protected group; (2) she was the subject of unwelcome sexual harassment; (3) the harassment occurred because of her sex; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment; and (5) a basis for holding the employer liable.  See

Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir.1999) (en banc), cert. denied, 529 U.S. 1068 (2000).[4]  In evaluating the fourth of these factors, a court must "examine the conduct in context, not as isolated acts, and determine under the totality of the circumstances whether the harassing conduct is sufficiently severe or pervasive to alter the terms or conditions of the plaintiff's employment." Id. at 1246.  Factors relevant to such analysis are the frequency of the conduct, the severity of the conduct, whether the conduct is threatening or humiliating, and whether the conduct unreasonably interferes with the employee's job performance. Id.

The County Defendants have argued that the instances of conduct pointed to by Horne are not evidence of sexually-based conduct or comments other than a remark by Pugh that his wife would not like him to take a trip with Horne and Pugh's discussions of Horne's alleged affairs.  A claim of harassment can be based on conduct without sexual overtones, however. The Eleventh Circuit has stated that gender- based "[s]exual harassment, like racial harassment, which creates a hostile or offensive environment for members of one sex is every bit the arbitrary barrier to sexual equality at the workplace that racial harassment is to racial equality." Bell v. Crackin Good Bakers, Inc., 777 F.2d 1497, 1503 (11th Cir. 1985).   Harassment on the basis of sex can be unwelcome sexual advances, but it does not have to be, and instead can be threatening, bellicose, demeaning, hostile or offensive conduct by a supervisor in the workplace because of the sex of the victim of such conduct.  Id.  Conduct of a nonsexual nature that ridicules women or treats them as inferior falls within this definition of prohibited sexual harassment. Cronin v. United Service Stations, Inc., 809 F. Supp. 922, 929 (M.D. Ala. 1992).

---

[4] Claims brought under the equal protection clause are evaluated under the framework of analysis applied in Title VII cases.  See Cross v. State of Alabama, 49 F.3d 1490, 1508 (11th Cir. 1995).

Therefore, the court will consider all of the conduct identified by Horne in evaluating whether sufficient evidence has been presented to establish the elements of a hostile environment claim.

Before the court can evaluate whether the evidence presented is sufficient to establish a claim of hostile work environment, however, the court must first identify what evidence presented in support of this claim is admissible evidence.  Much of Horne's evidence relevant to the claim is subject to a Motion to Strike jointly filed by all Defendants.[5]  Rather than separately address the Motion to Strike as a whole, however, the court will address the arguments raised in connection with that motion as they become relevant in the context of the hostile environment evidence presented.  Although the court will follow the numbering system used by Horne and followed by the County Defendants, the court has divided the types of comments as to those which are arguably gender based and those which are not obviously based on gender.

1.  Horne states that in 1998, Pugh told a newspaper editor that Horne was the token female candidate.  As pointed out by the County Defendants, Horne does not offer a citation to the record in her list, but does cite to evidence in support of this proposition in her statement of facts.  She cites to the Affidavit of Clint Claybrook and her own deposition.  The document referred to as an affidavit of Clint Claybrook is the subject of the Motion to Strike.  The County Defendants move to strike the original document because, although it is notarized, it does not state that it is made under penalty of perjury or under oath.  It states, "I am willing to testify under oath . . ." Plaintiff's Exhibit C.

---

[5] Based upon a newly submitted affidavit, the Motion to Strike has been withdrawn as to the Jack Goldfrank Affidavit.  See Renewed Joint Motion to Strike.

Having been given leave by the court to submit a new witness statement, Horne supplemented the record with a new statement by Clint Claybrook which states that it is made under penalty of perjury.  This statement does not say anything about Pugh having stated that Horne was a token female candidate, however.

In her deposition, Horne stated that Pugh had made some comments that she was the token female and did not stand a chance at getting the position.  Horne Dep. at page 58:1-6.  She goes on to state that Mr. Claybrook told her that Pugh said it. Id. at page 58: 23.  This evidence if offered for the truth of the matter that Pugh made the statement would be hearsay not subject to any exception.

2.  Horne states that Pugh told the Reverend Cedric Jones that Horne keeps her job through her female influence.  In her declaration, Horne states that Gordon Cox telephoned her and told her Pugh had told Cedric Jones, in effect, that Horne was a whore who provided sexual favors to keep her job.  Horne Declaration at ¶ 29.  Horne has established that she learned of this information during the relevant period.  The County Defendants, however, have objected to this evidence on hearsay grounds, providing an affidavit of Jones in which he denied having made such a statement to Cox.

It appears to the court that whether or not Jones denies that he made the statement to Cox is not the relevant inquiry, but would merely create a question of fact if the evidence is otherwise admissible.  The original declarant is Pugh.  His statement to Jones is not hearsay, but is an admission.  See Fed. R. Evid. 801(d)(2).  The statement of Cox to Horne likewise is an admission of a party opponent because Cox was a Commissioner.  The question before the court, therefore, is whether the alleged statement from Jones to Cox is admissible.  If offered for the

truth that Pugh made the statement to Jones, the statement is hearsay and is not subject to any hearsay exception.  The court will not consider this evidence in evaluating whether there was a hostile environment.  To the extent that the statement is offered to show that Commissioners received reports about Pugh's conduct, however, Cox's statement may be relevant on the issue of a basis for holding the Defendants liable.

3.  and 4. Horne has presented evidence that Pugh expressed the opinion that the County did not need a woman in the position of County Administrator.  Arthur Sanders ("Sanders") has provided a statement in which he says that on several occasions Pugh expressed to him that he was angry that Horne got the County Administrator position and that Pugh said, "we didn't need a woman up there in that position." Plaintiff's Exhibit E.  Sanders also describes a particular incident when he and Pugh were driving in a county truck and Pugh stated that "we didn't need a woman up there running things and I am not the reason she is up there."  Id.

The County Defendants have moved to strike this evidence, stating that the form in which it was presented did not meet the requirements for a sworn affidavit.  Although called a witness statement, Sanders' statement substantially meets the requirements of 28 U.S.C. § 1746 in that it is signed and provides that "the above statements are true and correct under penalty of perjury." See 28 U.S.C. § 1746 (requires the statement  "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.").

The County Defendants also state, however, that this evidence is not admissible in the evaluation of the hostile environment because it is hearsay, and there is no evidence that Horne was aware of this statement.  With respect to the hearsay objection, the court finds the County

16

Defendants' position unavailing.  Pugh's statement to Sanders is an admission of a party and, therefore, definitionally not hearsay under Federal Rule of Evidence 801(d)(2).  The court does agree with the County Defendants that the statement cannot be used to show that it contributed to a hostile environment without evidence that Horne was aware of it.  There is another purpose for which this evidence is relevant, however.  There is evidence of statements and conduct by Pugh which the County Defendants have stated was not based on gender and so should not be considered as part of a hostile environment.  Drawing all reasonable inferences in favor of the non-movant, Sanders' testimony as to Pugh's admission tends to show that Pugh was motivated by gender animus in his actions toward Horne, and even in the anger he expressed toward Horne, so the court will consider the evidence for that purpose.

5.  Horne states that Pugh spread rumors that Horne was having an affair with a married businessman.  At item number 18 of her list, Horne states that Pugh told Taylor Headley that she should not be County Administrator because she was having affairs.  Horne has stated in her declaration that Taylor Headley told her at a hospital task force meeting that Pugh had told him that Horne should not be Administrator because of her morals and character.  Horne Declaration at ¶ 26.  The County Defendants respond that Taylor Headley actually states in his declaration that Pugh said her character was such that she should not be County Administrator and that this comment was not gender-based.  Headley actually states, however, that Pugh said that "you may wonder why I have been fighting that woman–the administrator" and that Pugh proceeded to discuss Horne's "personal life" and "character."  Plaintiff's Exhibit O at ¶ 4.  The court concludes, therefore, taking together Headley's statement of Pugh's admission and Horne's separate statement that Headley informed her that the statement had been made while Horne was

acting in her capacity as County Administrator, that this evidence will be considered in evaluating the alleged creation of a hostile environment.

Horne has also submitted the affidavit of Clayton Claybrook ("Claybrook") who says that Pugh's friend who was a minister told him that Pugh had said he wanted to get rid of Horne because a public employee should not be sleeping with a married man. The County Defendants have moved to strike this evidence. Horne responds that the evidence is not hearsay because the statement from Pugh to the minister is an admission and the statement from the minister to Claybrook is not offered for the truth of the matter, but to show publication of a defamatory statement. Horne does not argue a basis for the admissibilty of such evidence for the hostile environment claim. Therefore, the court will not consider this evidence in connection with the hostile environment claim.

6. Wayne Bell, a county employee, told Horne that Pugh referred to her as a "bitch" during a commission meeting in 1999. See Horne Dep. at page 422. While Pugh's use of the derogatory term is not offered for the truth of the matter, the statement from Wayne Bell to Horne is offered for the truth of the matter that Pugh made the statement. Drawing all inferences in favor of the non-movant, it appears that Bell told Horne about this statement while he was employed with the County. A statement of an agent or servant concerning a matter within the scope of his employment and made during the existence of the relationship, is an admission of his employer. Fed. R. Evid. 801(1)(2)(D). Drawing all inferences in favor of Horne, therefore, the court concludes that it can consider this evidence.

18

7.  Pugh stated that his wife will not let him go on trips with the new administrator because his wife is a jealous person.  There is apparently no dispute that this comment is relevant and admissible evidence offered in support of the hostile environment claim.

10.  Horne also cites to evidence at item number 10 of her list that Pugh's brother told him after the November 2000 election that Pugh could "fire that bitch now" and Pugh replied that he "planned to."   The County Defendants state that there is no evidence that Horne was aware of this comment and that the alleged declarant, Jimmy Adams, is not listed in Horne's witness disclosures.  Horne has responded that she was not aware that Jimmy Adams would be willing to give a statement and that Horne referenced Adams' statements in her own deposition, so the County Defendants were aware of this evidence.

While it may be that Horne somehow alerted the County Defendants' to Jimmy Adams' version of the events in question, the court has not been pointed to that evidence.  Without evidence to show that Horne was aware of such a statement, the evidence will not be considered as part of the creation of a hostile environment.

There is evidence in the form of Mike Gall's declaration under penalty of perjury that after "the incident" between Pugh and Horne in her office, he asked Pugh what the problem with Horne was and Pugh told him that Horne was "just a bitch." Exhibit G.  Because there is no evidence cited as to whether Horne was made aware of this comment, the court will only consider it as possible evidence of Pugh's alleged gender-based animus, and as evidence that others perceived Pugh's conduct as objectionable.

11. Horne has stated that Pugh stated on more than one occasion that they did not need a single mom with children as county administrator.  She has cited no evidence in her itemized list

to support this allegation, however, and the court is not aware of any citation to such evidence elsewhere in her brief.  The County Defendants state that the only source for this allegation is Horne's verified complaint and that a verified complaint does not satisfy the requirements of Rule 56(e).  A verified complaint may be used in the summary judgment context, but verification must be on personal knowledge alone, not knowledge, information and belief.  Fowler v. Southern Bell Tel. & Tel. Co., 343 F.2d 150, 154 (5th Cir. 1965).[6]  Horne's Verified Complaint does not meet this requirement, and her Second Amended Complaint which took the place of the Verified Complaint is not verified in any manner.  Therefore, the court will not consider this allegation.

13.   Horne also contends that Pugh has stated that Horne is "doing woman things again, and we wouldn't have this type of situation if we had hired the man that I wanted."  Horne has stated in her declaration that while Gentry Lee was chairman of the Commission he told her that Pugh told him Horne was not handling county business, but was off doing "woman things." Horne Declaration at ¶ 27.   In the Motion to Strike, the County Defendants state that this paragraph of the declaration is inadmissible double hearsay.  The statement from Pugh to Lee is offered not for the truth of the matter, but to show that it was made, or alternatively is an admission under Rule 801(d)(2).  Because the statement from Lee to Horne was also a statement by a Commissioner, the statement is an admission by the County Commission under Rule 801(d)(2). The court will consider this evidence.

---

[6] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

20

15. and 24.  Horne lists as evidence in support of her hostile environment claim that Commissioner Dudley made a comment that "we don't need a skirt running the county."  The County Defendants state that the statements supporting this contention are inadmissible.  The County Defendants also argue that Horne's counsel confirmed before a dispositive motion was filed that she was not basing her claims on any conduct by Dudley.

The letter provided the court seeks to clarify that Dudley does not have to be present at a scheduled mediation conference because Horne does not seek to hold Dudley liable for invasion of privacy or other state law theories, and, according to the letter, Dudley's actions were only inaction as a Commissioner and placing Horne on leave.  The letter does not state that Dudley's actions are not to be considered in creating a hostile environment.  The court does not find, therefore, that the evidence may not be considered on that basis.

Wanda Lamb stated that she heard Dudley tell a member of the community that the County would be better off if it were not run by skirts.  Although the County Defendants state that her statement does not comply with the requirements of Rule 56(e), her declaration under perjury that the statements are true and correct complies with § 1746.  Horne has not provided the court, however, with evidence that she was aware of this comment. The court will, however, consider this evidence in evaluating the context of another comment by Dudley which has been pointed to by Horne and which will be discussed below.

19.  Horne states that at a press conference for then-Governor Siegelman, Pugh said Horne was "owned by the Piggly Wiggly man" in reference to an alleged affair.  The statement testified to by Curtis Lindsey is that Horne "belongs or is going with the Piggly Wiggly man."  Horne states in her declaration that Lindsey told her about the comment and that the comment

21

implied an affair.  Declaration at ¶ 28.  The County Defendants have moved to strike Lindsey's statement, but his statement that "I declare under the penalty of perjury that the foregoing is true and correct" complies with § 1746.  The County Defendants also state that this testimony is inadmissible hearsay and that Horne has not provided evidence as to when she learned of the statement.  Lindsey's testimony as to what Pugh said would be admissible as an admission on the part of Pugh, and Horne's separate testimony that Lindsey told her about it is offered merely for the fact that Lindsey told her and the effect that it had on her.  As discussed above, because Horne has stated in her declaration that she learned of comments during her employment, and this comment follows that statement, and she testified that Lindsey told her about the statement, the court finds that a reasonable inference can be drawn that Horne was aware of this comment during the relevant time.

Finally, the County Defendants argue that this comment was made by Pugh in the natural flow of conversation to let Lindsey know that Horne was involved with someone else because Lindsey had expressed that Horne was attractive.  Drawing all inferences in favor of the non-movant, however, the court will consider this evidence.  Rodgers v. Western-Southern Life Ins. Co., 12 F.3d 668, 676 (7th Cir. 1993) (holding that district court did not commit error in considering a comment not obviously based on race as evidence of harassment where it was plausible that the statement was based on race).

20.  Pugh and Dudley visited Commissioner Cattie Epps and said that Horne did not need her job because she receives child support.  Dudley Dep. at pages 38-40.  The County Defendants dispute that this evidence is admissible and also argue that it is not gender-based because men can also receive child support.  The court concludes that as the statements were

22

made by Commissioners to another Commissioner, all defendants in this case, they are definitionally non-hearsay.  See Rule 801 (d)(2).  Whether or not this evidence is evidence of gender bias is a question which must be resolved by the jury.  See <u>Rodgers</u>, 12 F.3d at 676. Therefore, the court will consider this evidence, drawing all reasonable inferences in favor of the non-movant.

The court now moves to evidence of comments or conduct which is less obviously based on gender.

8.  Horne has stated that Pugh became angry with Horne before an August 2000 meeting, yelled at her and told her she is not supposed to think, but do as she is told.

The County Defendants argue that Horne has failed to establish how Pugh's actions were based on gender.  Evidence that Pugh had expressed that the County did not need a woman in the County Administrator position, and other evidence of Pugh's animus, with all reasonable inferences drawn in favor of the non-movant, is sufficient to create a jury question as to whether Pugh's conduct was based on gender.

Similarly, Gordon Cox has stated under declaration of perjury that in Commission meetings he had witnessed, Pugh "seemed to always have a hostile tone and look on his face." Exhibit F.  This evidence, viewed in light of evidence of Pugh's gender-based animus, will also be considered in evaluating the alleged creation of a hostile environment.

9.  After the August 2000 meeting Pugh again yelled at Horne and asked her if she wanted to "go outside and finish this," he also told her "if it is the last thing I ever do, I will get rid of you." The County Defendants argue that this is not the kind of comment one would

ordinarily make to a woman and so is not gender based.  For the reasons discussed above, however, the court concludes that this is a conclusion to be made, or rejected, by a jury.

21.  When Horne's contract was up for renewal, Pugh passed out copies of Horne's bankruptcy records at a Commission meeting and contacted the surety to have Horne's bond revoked.  Commissioner Lee testified in his deposition that he thought it inappropriate that Pugh passed out the bankruptcy reports during the meeting. Lee Dep. at page 53: 7-13.  The court is unaware of admissible evidence concerning the calling of the bond surety, however, and will not consider the allegation regarding the bond.

22. Horne states that after her contract was renewed, Pugh objected to her sitting at the center of the Commission table. Horne states that the previous County Administrator, a man, had sat at the center of the table.  The County Defendants argue that Pugh's actions are indicative of personal animosity, not actions taken on the basis of gender.  Given the other evidence of Pugh's animosity, and given the evidence that Pugh's objections to Horne sitting at the center of the table were a change in procedure from when there was a male County Administrator, the court concludes that the inference from these actions is one for a jury to draw.

25.  Horne presents evidence that at the July 2003 meeting during which she was placed on administrative leave, Dudley asked some members of the public if they were there "for the hanging."  Wanda Lamb declared under penalty of perjury that Dudley asked a group of people gathered before the Commission meeting if they were there for the hanging and that Lamb saw Horne in the hall and asked her what Dudley meant by that.  Lamb says that Horne responded that she was on the agenda that day.  Exhibit M.

The County Defendants say that Lamb's statement is due to be stricken, but as stated above, her statement complies with the requirements of § 1746.  The County Defendants further contend that Dudley's comments are not relevant to the hostile environment claim based on a letter written to counsel, but for the reasons already discussed, the court does not agree.  Finally, the County Defendants state that the comment was not based on Horne's gender and that Dudley has testified that he was making a reference to an old expression about people gathering.  The court concludes, though, that given evidence that Dudley expressed the opinion that the County should not be run by a skirt, the inference to be drawn from his statement is one to be drawn by the trier of fact.

26.  This item of Horne's list is that almost continually from January 1999 until the present Pugh has spread rumors and lies about Horne.   This item appears to be a restatement of earlier statements identified by Horne which have previously been discussed.

27. Horne lists at this item that Pugh criticized everything that Horne did.  This statement is not supported by citation to any evidence and is too broad to be considered.

28. Horne cites to the statement of Gordon Cox wherein he identifies several aspects of Pugh's treatment of Horne.  See Plaintiff's Exhibit F.  The court has already discussed aspects of Gordon Cox's declaration under penalty of perjury.  The court has only considered the aspects of his declaration which are admissible evidence.  One aspect of his declaration which the court has not yet discussed which appears to be admissible is Gordon Cox's personal observation that Horne conducted herself in a professional manner at Commission meetings and has been knowledgable and informed about the subject matter presented at the meeting.  Some of Gordon Cox's descriptions of Pugh's actions do not appear to be within his personal knowledge, such as

his statements about Pugh's intent, but to the extent that Gordon Cox personally observed Pugh's questioning of Horne during meetings in a manner which Gordon Cox perceived to be hostile, the court will consider that evidence as to the objective prong of the creation of a hostile environment.  Cox also made the observation that Pugh did not treat the other department heads, including men, in the same manner in which he treated Horne, which the court will consider as evidence of Pugh's bias.

29.  Horne provides evidence that Cattie Epps testified in her deposition that voters called to complain that Horne was being talked down to during a Commission meeting.  Epps Dep. at page 41.  The County Defendants argue that there is no evidence that Horne was aware of the complaints and there is no evidence that Horne was being talked down to because of her gender.  Although the court agrees that without evidence that Horne was aware of the complaints, the complaints themselves do not support that Horne subjectively suffered a hostile environment, the fact that complaints were made about the treatment she was experiencing will be considered as objective evidence.  See Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir. 1999) (stating that evaluation of severity and pervasiveness has both a subjective and an objective component).

30. Horne was not allowed to participate in the hiring of the new assistant administrator. She has pointed to Lee's testimony that this was the first time the County Commission had made a personnel decision without input from the department head.  Horne has testified that when she questioned the decision, Pugh informed her that he would not dignify her with an answer.  The County Defendants state that there is no evidence that this event was based on Horne's gender, and that Horne states in her affidavit that the Commission hired employees of other department

heads.  The court will consider this evidence as there is some evidence that it was a deviation from normal procedures.

31.  Horne has pointed to evidence that she cried after the March 5, 2003 meeting and that she complained to Lee about how humiliated she felt.  The court will consider this evidence.

The County Defendants have argued that Horne fails to meet the objective prong of hostile environment analysis.  In advancing this argument, the County Defendants have limited their analysis to the comments by Pugh which they characterize as being arguably sexually-based comments.  In other words, the County Defendants have argued that because only two comments were gender based, there is no hostile environment.  As stated above, evidence of "threatening, bellicose, demeaning, hostile or offensive conduct," may be considered.  And, the evidence of Pugh's comments indicated that he had gender-based animus which a reasonable jury could conclude animated the comments and conduct directed at Horne which were not explicitly gender-based.  Therefore, this argument by the County Defendants is unavailing.

Having sifted through the objections to Horne's evidence, the court will consider the following evidence with regard to the issue of the creation of a hostile environment as to both the subjective and objective component of the severe and pervasive analysis: evidence that Pugh referred to Horne as "that woman" and discussed Horne's personal life and character with persons who had business with the Commission; that Pugh called Horne a "bitch" to a county employee; that Pugh said he could not go on trips with Horne because his wife is a jealous person; that Pugh stated to another Commissioner that Horne was not doing her work but was off doing woman things; that Dudley said they did not need skirts running the County and that the County would be better off if it were not run by skirts; that Pugh said that Horne belongs or is

27

going with the Piggly Wiggly man during a press conference with the Governor; that Pugh and Dudley visited a Commissioner and told her that Horne did not need her job because she received child support; that Pugh became angry with Horne before an August 2000 meeting and after the meeting asked her to go outside and "finish this" and told her he would get rid of her; that Pugh passed out copies of Horne's bankruptcy records at a Commission meeting; that Pugh objected to Horne sitting at the center of the Commission table, where the previous male County Administrator had sat; that Dudley asked whether members of the public were there for "the hanging" when Horne was placed on administrative leave; that a Commissioner perceived Pugh's questioning of Horne during meetings to be hostile; that voters called to complain about Pugh's treatment of Horne during a Commission meeting; and that Horne was not allowed to participate in a hiring decision.  In addition to the above evidence, Pugh's conduct which is not obviously based on Horne's gender has been considered in light of Sanders' evidence that Pugh said the County did not need a woman in the County Administrator position.

As stated above, factors relevant to the analysis of the severity and pervasiveness of the harassment are the frequency of the conduct, the severity of the conduct, whether the conduct is threatening or humiliating, and whether the conduct unreasonably interferes with the employee's job performance.  With respect to the factor of the frequency of the conduct, the County Defendants have stated that because Horne only saw the Commissioners four times a month, and because Pugh held a part-time position, Horne's perception of a hostile environment was not reasonable.  The evidence presented, however, indicated that persons other than Pugh were relating his comments to Horne, and so her awareness of conduct did not require Pugh's presence.  Horne Declaration at ¶ 26.

28

As to the severity of the conduct, some of Pugh's conduct, such as yelling at Horne and asking her to step outside was severe as well as threatening.  Reports from other Commissioners and from people who dealt with the Commission that Pugh was commenting on Horne's personal life and character and characterizing her activities as "woman things" could be perceived by a reasonable person to be humiliating.  In addition, objections to Horne's seating at the table, belittling questioning during meetings, and not allowing Horne to participate in a hiring decision could also be viewed as humiliating actions.

Considering all of the admissible evidence Horne has pointed to in a light most favorable to her, and drawing all reasonable inferences in her favor, the court concludes that a question of fact has been raised as to both the subjective and objective components of the severe and pervasive analysis.

The County Defendants also have argued that this court ought to grant summary judgment on the basis of the Faragher/Ellerth defense.  Horne contends that the Faragher/Ellerth affirmative defense ought not be applicable in this case as Commissioners Pugh and Dudley should be considered the same as owners and employers.

Although there does not appear to be an Eleventh Circuit case directly on point, there is Eleventh Circuit precedent, discussed above, that the discriminatory motive of a member of a municipal governing body cannot be imputed as a basis for finding the municipality liable.  Under the same reasoning, the court concludes that harassment by two members of a seven member Commission does not preclude application of the Faragher/Ellerth defense.  See also Mortenson v. City of Oldsmar, 54 F. Supp. 2d 1118 (M.D. Fla. 1999) (analyzing application of Faragher/Ellerth where harasser was a city council member).

Horne contends that she complained about the harassment she was experiencing, but that nothing was done in response.  She states in her declaration that she reported the harassment to all of the Commissioners.  Horne Declaration at ¶ 25.  In her brief she states that there is no evidence that any investigation was conducted nor was any training conducted.  Apparently as evidence that no effective action was taken, Horne has pointed to her deposition testimony that even after Pugh left office, he engaged in actions which Horne perceived as harassing, including taking her photograph during a Commission meeting and following her car closely.  See Horne Dep. at pages 214-16.

Steps short of terminating a harasser, when proven effective in ending harassment, have been recognized as appropriate remedial actions.  For instance, in Mortenson the County Defendants implemented harassment training in response to complaints.  This court simply has not been presented with sufficient evidence of the response, if any, that the County Defendants made in light of Horne's complaints.  In view of the evidence that incidents of harassment did not end, the court concludes that the County Defendants have not established at this stage of the proceedings that they are entitled to summary judgment on the basis of Faragher/Ellerth.[7]

ii. Title VII Retaliation Claim

Horne has argued that she can establish a claim of retaliation through either direct or circumstantial evidence.

Direct Evidence Claim

---

[7] The arguments raised by the Plaintiff in her pending Motion in Limine as to the Defendants' ability to raise a Faragher/Ellerth defense, and to which the Defendants have not yet had an opportunity to respond, have not been addressed in this Memorandum Opinion and Order.

The Eleventh Circuit has held that "[d]irect evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption. Therefore, remarks by non-decisionmakers or remarks unrelated to the decision making process itself are not direct evidence of discrimination." Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir.1998) (citations omitted).  "[D]irect evidence relates to actions or statements of an employer reflecting a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee."  Carter v. Three Springs Residential Treatment, 132 F.3d 635, 641 (11th Cir. 1998).

The County Defendants have argued that Horne cannot demonstrate that she was subjected to an adverse employment action. The Eleventh Circuit has explained that a plaintiff in an employment discrimination case always bears the burden of proving that it is more likely than not that the employer took an adverse employment action against the plaintiff on the basis of a protected characteristic.  Hipp v. Liberty Nat. Life Ins. Co., 252 F.3d 1208, 1230 (11th Cir. 2001), cert. denied, 534 U.S. 1127 (2002).  This is true "whether [the plaintiff] is relying on direct evidence of discrimination or employing the burden-shifting approach . . . ." Id. at page 1230 n.34 (citation omitted); see also Ferrell v. Masland Carpets, Inc., 97 F. Supp. 2d 1114, 1123 (S.D. Ala. 2000) ("there must be a direct correlation between the adverse employment action and the discriminatory comment for such a statement to constitute direct evidence.").

To demonstrate that an employee has suffered an adverse employment action, "an employee must show a **serious and material** change in the terms, conditions, or privileges of employment." Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis in original).  There must be a tangible adverse effect. Id.

31

The County Defendants argue that because Horne was placed on paid leave, her administrative leave was not an adverse employment action.  As Horne points out, the Eleventh Circuit has explicitly held that a "plaintiff was the subject of an adverse employment action; he was suspended with pay for thirty days."  Hairston v. Gainesville Sun Publishing Co., 9 F.3d 913, 920 (11th Cir. 1993).  The County Defendants respond that Hairston is not controlling because in that case the plaintiff was suspended as a punitive action after having been previously disciplined.

Horne has presented evidence, however, that at the July 2003 meeting, Dudley asked some members of the public if they were there "for the hanging."  This is some evidence from which to conclude that the action taken against Horne was punitive in nature.  Accordingly, the court concludes that Horne has presented sufficient evidence of an adverse employment action.

With regard to the alleged direct evidence of discrimination, Horne argues that the Commission minute meetings from the July 16, 2003 meeting state that she was placed on administrative leave because of litigation she had begun against the County Defendants.  The minutes of the County Commission meeting, which were taken by Horne, include the following remarks:

> Upon returning from Executive Session Attorney Billy Benton stated the litigation presently pending, filed by Mrs. LeAnn Jordan against the Russell County Commission is fixing to enter the discovery phase of the litigation.  It is recommendation of myself and Attorney Robbie Hyde, who is my co-council (sic) in this case, that you now place Mrs. Horne-Jordan on Administrative Leave for a period of 90 days.  At the end of that time we will see if we need to extend the leave or for her to return to work.
>
> Plaintiff's Exhibit BB.

This court must conclude that the evidence presented is not direct evidence of a retaliatory motive because it is only evidence that the attorney made a recommendation and the Commission voted to place Horne on leave.  It is not direct evidence of the decisionmakers' motive. There is no evidence that the Commission's vote was based on the recommendation, but even if it was, the recommendation itself was not that she be placed on leave because she had filed an EEOC charge, but because the already pending case was entering the discovery phase.

Circumstantial Evidence Claim

Horne also argues that she can establish a circumstantial evidence case of retaliation.  A prima facie case of retaliation consists of evidence that (1) the plaintiff participated in an activity protected by Title VII, (2) she suffered an adverse employment action, and (3) a causal connection. Berman v. Orkin Exterminating Co., Inc., 160 F.3d 697, 701 (11th Cir. 1998).

The County Defendants then argue that no causal connection exists because the Commissioners were placed in an untenable position and had received reports that Horne was removing documents from her office.  The third prong of the prima facie case is satisfied if the evidence shows that the protected activity and the adverse action are not totally unrelated. Id. Generally, close temporal proximity creates a genuine issue of fact as to causation. Brungart v. BellSouth, 231 F.3d 791, 799 (11th Cir. 2000).  The court concludes, therefore, that this element has been met in this case.

The County Defendants argue that non-retaliatory reasons existed for their decision.  The County Defendants state that they were acting on the advice of counsel.  Of course, if the Commissioners were merely rubber-stamping a retaliatory recommendation, then the fact that they were following advice would not necessarily absolve them of liability.   They state,

33

however, that the County Commission was fearful that Horne would destroy evidence relevant to

the case.  Sara Miles ("Miles"), Horne's administrative assistant, has stated in a Declaration that

Horne had a paper shredder in her office and began shredding documents after the lawsuit was

filed and that Miles informed the County Attorney of these actions. Miles Declaration at ¶ 20.

Isaiah Sumbry ("Sumbry"), a County Commissioner, has stated in an affidavit that the

Commissioners considered the issue of placing Horne on leave with full pay and benefits.

Sumbry Affidavit at ¶ 11.  Sumbry states that the Commissioners had received reports of Horne

taking documents from the Commission office and shredding documents in her office.  Id.

The County Defendants further state that Horne is unable to show that the majority of the

Commission had a retaliatory motive.

Horne contends that she has adequate evidence to establish that the articulated reasons

were pretextual.  Horne points to the statement in the minutes as circumstantial evidence that the

decision maker had retaliatory animus.  She also points to Dudley's question to people gathered

outside of the meeting whether they were there for the hanging.  Finally, she states that because

an affidavit offered by the County Defendants of Shari Littleton is a sham, doubt has been cast

on the reason articulated by the County Defendants.

With respect to the argument about Shari Littleton's ("Littleton") affidavit, Horne has

provided the court with an affidavit in which Littleton states that she did not agree with

statements in her original affidavit such as that she feared repercussions from Horne.  See

Plaintiff's Exhibit R.  Even accepting that evidence, however, Horne has not created a question

of fact as to whether the Commissioners reasonably believed, either correctly or incorrectly, that

Horne was destroying evidence relevant to the case, based on reports from other employees for

whom no affidavit disclaiming earlier statements has been filed, such as Sara Miles.  See Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991).

Horne has asked the court to impute a retaliatory motive to a governing body based on the comment of one of its members.  The Eleventh Circuit has determined that the alleged racially discriminatory motive of only one member of a three-member majority of a five-member council cannot give rise to municipal liability.  Mason v. Village of El Portal, 240 F.3d 1337, 1339 (11th Cir. 2001).   Therefore, liability cannot be attributed to the County Defendants based on evidence of discriminatory motive of a minority of that body.   Horne has also pointed to the recommendation of the County attorney to the governing body for which there is no evidence that the members relied upon in voting to place Horne on leave.  County liability on the basis of ratification can exist when a subordinate public official makes an unconstitutional decision which is then adopted by the final policymaker, but only if the final policymaker ratifies "not only the decision itself, but also the unconstitutional basis for it."  Matthews v. Columbia County, 294 F.3d 1294, 1297 -1298 (11th Cir. 2002).  Added to the attenuated nature of the evidence is the fact that the recommendation of the county attorney was that Horne be placed on leave because the case was entering the discovery phase, not because she had filed a an EEOC charge complaining of discrimination, which is the protected activity at issue.

The court must conclude, after drawing all inferences in favor of the non-movant, that Horne has not sufficiently established intent to retaliate on the part of the County Commission, nor undermined the veracity of the articulated reason that the County Commission believed that Horne was removing and/or destroying evidence.  Summary judgment is due to be GRANTED as to the retaliation claim.

iii.  Title VII Discrimination in Pay and Equal Pay Act Claims[8]

The County Defendants state that the analysis applicable to the exception to the definition of employee under Title VII is also applicable to the Equal Pay Act ("EPA").  For the reasons discussed above, the court concludes that this exception does not apply to preclude Horne from asserting Title VII or EPA claims.

The County Defendants also argue that Horne cannot establish claims of gender discrimination or violation of the EPA because she ascribes a discriminatory motive to Commissioner Pugh, but discriminatory intent of one member of the four-member majority of the seven-member Russell County Commission cannot establish liability on behalf of the County Defendants.

Horne does not appear to respond to this argument.  In fact, in her response to the County Defendants' Motion for Summary Judgment, she states that the wage differential she alleges to have suffered "was more than likely caused by Pugh's feelings . . . ."  Plaintiff's Brief at page 82.  At some points in her brief, Horne identifies some comments made by Dudley.  Horne does not provide the court evidence, however, with the break down of Commissioners who would have had an affect on her salary level.

In this case, based on Horne's identification of Pugh's discriminatory motive, and possibly Dudley's as well, but no showing of a similar motive on the part of the remainder of the

---

[8] The Third Amended Complaint in this case asserts disparate treatment in pay as a grounds for relief under Title VII and the Equal Pay Act, but not Equal Protection. There is no Equal Protection claim against the County Defendants. See Third Amended Complaint.  Also, although other disparate treatment claims are addressed by the Defendants, the only disparate treatment claim argued by Horne is disparate treatment in pay.

Commission, the court concludes that summary judgment is due to be GRANTED as to the Title VII disparate treatment claim.  See Mason, 240 F.3d at 1339.

Alternatively, the court concludes that summary judgment is due to be GRANTED as to the Title VII wage claims as being untimely. Wage claims are considered continuing violations. See Bazemore v. Friday, 478 U.S. 385, 395 (1986).  The basis for the continuing violation theory is that each time the plaintiff receives pay which is lower than a person outside of her class, there is a violation.  Id. In this case, however, there came a time at which the alleged violations ceased which preceded the filing of the EEOC charge.  Horne's predecessor, Ben Thornhill, made $52,254.31 at the time of his retirement.  Horne was hired at a salary of $42,000.00.  On January 1, 2002, Horne was making $54,165.14.  Supplemental Affidavit of Gentry Lee at ¶ 3.  Horne alleges in her Complaints that her EEOC charge was filed on June 3, 2003 and amended on August 5, 2003.  An EEOC charge must be filed within 180 days of the alleged violation.  42 U.S.C. § 2000e-5(e).  The alleged wage violations, however, ceased on January 1, 2002, which is more than 180 days before June 3, 2003.  Summary judgment is, therefore, due to be GRANTED as to the Title VII claim on this alternative basis. [9]

Horne's EPA claim is not defeated merely because she does not have evidence that the entire County Commission was motivated by gender-based animus, because the EPA does not include the Title VII requirement of a showing of intentional discrimination.  Miranda v. B & B

––––––––––––––––––––

[9] The EPA has a statute of limitations of two years from the date of the filing of the Complaint, in the absence of additional findings.  Horne's filing was within this limitations period. The County Defendants argue that Horne's claim accrued in January of 1999 when she learned of the pay differential, citing Gonzales v. American Family Life Assurance Co., 202 F. Supp. 2d 1373, 1382 (M.D. Ga. 2002).  There is no discussion of the continuing violation theory in that case, however.

Cash Grocery Store, 975 F.2d 1518, 1526 (11th Cir.1992).  A plaintiff bringing an EPA claim must prove that "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions," was performed for less pay than an employee of the opposite sex.  See 29 U.S.C.A. § 206(d)(1); Miranda, 975 F.2d at 1526.  To establish a prima facie case, a plaintiff need only demonstrate that the jobs at issue are substantially similar and does not have to show that the skills or qualifications of the employees holding the positions are also substantially equivalent. Arrington v. Cobb County, 139 F.3d 865, 876 (11th Cir. 1998).  The burden of proving that the jobs are equivalent is difficult to meet and is a more difficult burden than the comparison which must be made to support a Title VII claim.  Miranda, 975 F.2d at 1526.

The County Defendants contend that Horne cannot meet this burden because she has compared herself to other Russell County department heads.  The County Defendants argue that the two comparators, although also department heads, do not perform similar work. J.W. Brannen ("Brannen")  is the Chief Appraiser.  He supervises twelve employees. Cal Market ("Market") is the County Engineer.  He supervises fifty-one positions.

In response, Horne cites to her deposition in which she said that her job was equally responsible with that of the County Engineer and that she was employed at the same level as the other department heads.  Horne supervises fewer employees, six, than either of these two comparators, however.  The court concludes, therefore, that she has not demonstrated that Brannen and Market were performing equal work at a higher rate of pay.

Horne's claim based on the salary paid her predecessor, Ben Thornhill ("Thornhill") presents a closer question.  See, e.g., Wright v. Rayonier, Inc., 972 F. Supp. 1474, 1481 (S.D.

38

Ga. 1997) (examining plaintiff's evidence and concluding that prima facie case was met in a case involving a predecessor who was paid more).  The County Defendants argue that Horne has not demonstrated that Thornhill, her predecessor, performed the same job duties.

Horne does not elaborate on Thornhill as a comparator for her claim in the argument section of her brief, although she cites to some evidence in the fact section of her brief.  Horne has argued that her contract provided that she would have the same rights and duties as the previous administrator.  Horne's June 2001 contact which states that the duties shall include but not be limited to supervising employees, overseeing accounting and bookkeeping, and all additional duties commonly discharged by the County Administrator.  Exhibit B to Horne Declaration. The contract also provides that the duties of the employee may be changed from time to time by mutual consent of the employer and the employee. Id.

The Defendants have presented evidence in the form of Cattie Epps Affidavit that "the Russell County Commission hires a County Administrator to facilitate the Commission's performance of its statutory duties, namely to adopt a County budget, ensure all expenses are paid, to levy County taxes, and to direct, control and maintain all County property, including land, buildings, equipment and roads."  Cattie Epps Affidavit at ¶ 6.  This evidence allows for the reasonable inference to be drawn that the primary duties of the County Administrator have remained constant.  Accordingly, the court concludes that there is sufficient evidence to create a question of fact as to whether Horne and Thornhill performed the same work.

When a plaintiff demonstrates that she was paid less for equal work than a male employee, the burden shifts to the employer to prove one of the available defenses under the EPA.  A wage disparity does not violate the EPA if it results from "(i) a seniority system; (ii) a

merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) any factor other than sex." Irby v. Bittick, 44 F.3d 949, 954 (11th Cir.1995) (quoting 29 U.S.C. § 206(d)(1)). The Eleventh Circuit has found factors other than sex to "include 'unique characteristics of the same job; ... an individual's experience, training or ability; or ... special exigent circumstances connected with the business." Irby, 44 F.3d at 955.  Although the burden to prove the defense always rests on the defendant and is a heavy burden, if there are no questions of fact, summary judgment can be granted on the basis of an EPA defense. Id. at 957 (granting summary judgment where defendant proved that wage disparity was based on experience).

   In this case, the County Defendants have stated that Thornhill served as County Administrator for over twenty-one years and that Horne had no training or experience in county government.  The County Defendants have presented the Affidavit of Gentry Lee in which he states that he "did not believe Ms. Horne should be immediately paid Mr. Thornhill's salary, as Mr. Thornhill spent twenty-one years accruing that salary.  The Commission took the lack of post-secondary education and lack of county government experience into account when formulating Ms. Horne's starting salary."   County Defendants' Exhibit C at ¶ 13. As the County Defendants point out, relative training and experience are valid factors "other than sex" under the EPA.  Irby, 44 F.3d at 955.

   Horne does not directly respond to the defense offered by the County Defendants except to state that her job is equally as important as other department heads and her pay was "more likely caused by Pugh's feelings that a female should not even be in this position."  Plaintiff's Brief page 82.  It appears, therefore, that although a plaintiff does not have to establish intent to

40

discriminate in an EPA case, Horne intends to rely on evidence of animus on the part of Pugh to create a question of fact as to the County Defendants' statutory defense.

Horne's evidence of Pugh's animus, or even Pugh and Dudley's animus, is not sufficient to create a question of fact as to whether the Commission as a whole set Horne's salary based on relative experience.  Cf. Mason, 240 F.3d at 1339; Matthews, 294 F.3d at 1297.  Summary judgment is, therefore, due to be GRANTED as to the EPA claim as well.

### 2.  Federal Claims Against Pugh

With respect to the federal claims asserted against him under § 1983, Pugh has claimed the defense of qualified immunity.  Qualified immunity is a protection designed to allow government officials to avoid the expense and disruption of trial. Ansley v. Heinrich, 925 F.2d 1339, 1345 (11th Cir.1991).  As a preliminary matter, the court must determine whether the public official was acting within the scope of his discretionary authority at the time the allegedly wrongful acts occurred.  See Rich v. Dollar, 841 F.2d 1558, 1563 (11th Cir. 1988).  Once it is established that a defendant was acting within his discretionary authority, the court must determine whether "[t]aken in a light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Saucier v. Katz, 533 U.S. 194, 201 (2001).  "[I]f a constitutional right would have been violated under the plaintiff's version of the facts," the court must then determine "whether the right was clearly established."  Wood v. Kesler  323 F.3d 872, 878 (11th Cir. 2003).

Requiring that a constitutional right be clearly established means that liability only attaches if "[t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  United States v. Lanier, 520 U.S.

259, 270 (1997).  In other words, a defendant is entitled to "fair warning" that his conduct

deprived his victim of a constitutional right. Hope v. Pelzer, 536 U.S. 730, 741 (2002).

In Vinyard v. Wilson, 311 F.3d 1340, 1350–53 (11th Cir. 2002), the Eleventh Circuit

articulated three ways in which individual state defendants can receive "fair notice" that their

conduct violates clearly established law.  First, the words of a federal statute or constitutional

provision may be specific enough "to establish clearly the law applicable to particular conduct

and circumstances and to overcome qualified immunity, even in the total absence of case law."

Id. at 1350 (emphasis in original).  The Eleventh Circuit considers a case falling into this

category an "obvious clarity case."  Id. at 1350.

Second, if the conduct at issue is not so egregious as to violate the Constitution or a

federal statue on its face, the court must turn its attention to case law that espouses "broad

statements of principle . . . that are not tied to particularized facts."  Id.  at 1351.  In these types

of cases, courts will declare "X Conduct" unconstitutional regardless of the specific factual

situation.  Id.  "[P]ut differently, the precise facts surrounding 'X Conduct' are immaterial to the

violation," thus these decisions can "clearly establish law applicable in the future to different sets

of detailed facts."  Id.

Third, courts must look to cases that tie a particular type of conduct to the specific facts

of the case.  Id.  With these cases, courts must examine case law stating that "Y Conduct" is

unconstitutional in "Z circumstances."  Id.  If the circumstances facing the official are

"materially similar" to those of the fact-specific case, this precedent can clearly establish the

applicable law and qualified immunity will not be warranted.  Id. at 1352.

In this case, there is no contention that Pugh was not acting within his discretionary authority. With respect to the asserted due process violation, the court agrees that Pugh is entitled to qualified immunity because, as discussed above in connection with the discussion of the due process claim as asserted against the County Defendants, Horne has failed to establish a constitutional due process violation.

With respect to an equal protection violation, Pugh argues based on various cases, including Blalock v. Dale County Board of Education, 84 F. Supp. 2d 1291 (M.D. Ala. 1999), that the conduct in which he engaged did not rise to the level of severe and pervasive harassment so as to create a hostile environment in violation of the equal protection clause. Pugh states that he was only one of a number of Commissioners, not Horne's sole supervisor, and his position was only part-time; that his actions were only reflective of personal animosity; and that much of Horne's evidence is inadmissible or is not evidence of conduct based on gender. Finally, Pugh argues that he supported two women for the county administrator position before Horne was hired.

This court has already concluded that sufficient evidence exists for a jury to draw an inference that Pugh's actions were motivated by gender animus and that there is sufficient evidence, considering the totality of the circumstances, that the harassment was sufficiently severe and pervasive to create a hostile environment for purposes of a Title VII claim against the County Defendants. The claim against Pugh, however, arises under the Equal Protection Clause to the United States Constitution, not Title VII.

The Eleventh Circuit applies Title VII analysis to hostile environment racial harassment and sexual harassment claims brought under the Equal Protection Clause. Watkins v. Bowden,

43

105 F.3d 1344, 1355 (11th Cir. 1997).   Therefore, the court concludes that applying the analysis

it earlier applied in the context of the Title VII claim, Horne has also established a constitutional

violation.  Although some of the actions relevant to the Title VII hostile environment claim were

actions on the part of Dudley, even if those actions are removed from the court's consideration,

the court still concludes that a question of fact has been created as to a constitutional violation by

the actions of Pugh and Sanders' evidence as to Pugh's motivation.  See supra pages 27-8.

The next step in qualified immunity analysis is to determine whether the constitutional

right violated was clearly established.  There is no doubt that Bell v. Crackin GoodBakers, Inc.,

777 F.2d 1497 (11th Cir. 1985) clearly established that gender-based harassment which creates a

hostile environment, even if it is not of a sexual nature, violates Title VII.  To find that Pugh is

not entitled to qualified immunity, however, the court must also be satisfied that it was clearly

established that such harassment violates the constitution.  See  Snider v. Jefferson State

Community College, 344 F.3d 1325, 1330 (11th Cir. 2003) (holding that a reasonable official

would not have had fair warning that a same-sex sexual harassment which was clearly actionable

under Title VII also violated the constitution).

In Cross v. State of Alabama, 49 F.3d 1490, 1504 (11th Cir. 1995), the Eleventh Circuit

held there is a "constitutional right to be free from unlawful sex discrimination and sexual

harassment in public employment."  Cross, 49 F.3d at 1507; see also Snider, 344 F.3d at 1329

("It was clearly established at the time of the alleged harassment here that, in the context of

different-gender harassment, the Equal Protection Clause provided a right to be free from

unlawful sexual harassment in public employment.").

It is clear from the facts of <u>Cross</u> that sexual harassment in public employment encompasses gender harassment of a non-sexual nature.  For instance, one plaintiff-intervenor in the <u>Cross</u> case testified at trial that the harasser belittled women and treated them differently than men, glared and yelled at women, and that she was terrified of the verbal abuse and angry outbursts.  <u>Id.</u> at 1496.  This was true of additional plaintiffs or plaintiff-intervenors.  <u>Id.</u> at 1497 (plaintiff complained that harasser paced around women employees, threw things at her, and remarked that women were taking over things). Other plaintiffs or plaintiff-intervenors experienced threatening and belittling conduct in addition to comments or conduct of a sexual nature.  <u>Id.</u> (harasser yelled at woman employee, put her down, lost his temper with her, stood close to her and put his arm around her).

In this case, as in <u>Cross</u>, Horne experienced harassment that was arguably of a sexual nature, and also demeaning and threatening behavior that was not explicitly based on gender. Also in <u>Cross</u> there was testimony in connection with some of the conduct that only women and not men were treated in the belittling fashion.  In this case, there is evidence that Pugh objected to Horne sitting in the middle of the Commission table, which was the seat occupied by her male predecessor.  Gordon Cox also declared under penalty of perjury that Pugh did not treat the other department heads in the same manner in which he treated Horne.  <u>See</u> Plaintiff's Exhibit F. There is also evidence, as discussed above, that Pugh was biased against Horne because of her gender.  <u>See</u>, <u>e.g.</u>, Plaintiff's Exhibit E.  The court concludes, therefore, that <u>Cross</u> gave Pugh fair warning that harassment on the basis of gender which creates a hostile environment violates the Constitution.

Pugh also contends that he is entitled to legislative immunity.[10]  Local legislators are entitled to absolute immunity from suit under 42 U.S.C. § 1983 for "all actions taken 'in the sphere of legitimate legislative activity.' " Bogan v. Scott-Harris, 523 U.S. 44, 54 (1998) (quoting Tenney v. Brandhove, 341 U.S. 367, 376 (1951)). This immunity is broad-sweeping and protects its bearer from liability for damages as well as for declaratory and injunctive relief.  See Housing Investors, Inc. v. City of Clanton, Ala., 68 F. Supp. 2d 1287, 1295 (M.D. Ala. 1999).  A legitimate legislative activity is defined not by the legislator's motive, but the by activity itself. Bogan, 523 U.S. at 55.

Pugh has identified in chart form[11] the following as being protected by legislative immunity: his statement that he could not go out of town with the new County Administrator because his wife was a jealous person, Pugh's anger toward Horne before and after the August 16 meeting, comments made about Horne during public meetings, comments during a meeting about a hospital tax that Horne was having affairs, comments to Epps about Horne's getting child support, passing out bankruptcy records during a meeting, objecting to Horne sitting in the middle of the Commission table, March 5 Commission meeting during which an employee was hired without involving Horne and Horne's complaint about that action.

---

[10] The County Defendants have not argued that any legislative immunity by Pugh would affect claims asserted against them.

[11] The issue of legislative immunity was raised in Pugh's original brief, but the chart was not provided at that time.  The chart was included for the first time in Pugh's reply brief and Pugh has subsequently moved to submit a corrected and amended reply brief which alters this chart in significant ways.  Because Horne has not had an opportunity to respond to either the original or proferred substituted chart, the court has not considered it beyond the identification of the incidents of alleged harassment previously identified by Horne as to which Pugh claims legislative immunity.

The Eleventh Circuit has outlined the broad contours of legislative immunity and has explained that it is not the nature of the position, but "the nature of the act which determines whether legislative immunity shields the individual from suit." Yeldell v. Cooper Green Hosp., Inc., 956 F.2d 1056, 1062 (11th Cir. 1992). "Where the decision affects a small number or a single individual, the legislative power is not implicated, and the act takes on the nature of administration." Id. at 1062 -1063. Acts such as voting, speech making on the floor of the legislative assembly, preparing committee reports, and participating in committee investigations and proceedings, are generally deemed legislative. Id. at 1062. Acts such as the public distribution of press releases and newsletters, private publication of committee materials, and the denial of licenses are generally not protected by the doctrine of legislative immunity. Id. Decisions to hire, fire, and demote certain individuals are administrative and not protected by legislative immunity. Id.

The actions identified by Pugh do not appear to be properly categorized as legislative. With regard to the personnel decision in which Horne was not allowed to participate, there is no legislative immunity as that is an administrative action. See id. Similarly, speaking to Epps about Horne not needing her position because she received child support was also taken pursuant to a personnel, and therefore, administrative, function. Comments about Horne to the effect that she should not be County Administrator because she was having affairs are similarly related to a personnel matter and not legislative. Pugh's angry exchanges with Horne before and after a Commission meeting, while concerning the identification of his name with an agenda item, because they did not occur within the context of a Commission or committee meeting, were not legislative. Furthermore, comments which were made during Commission meetings that Horne

ought not to be County Administrator, Pugh's objection to Horne sitting in the middle of the table, or Pugh's passing out Horne's bankruptcy records did not concern the business of the Commission, but instead at most concerned personnel matters. The court concludes, therefore, that Pugh is not entitled to summary judgment on Horne's equal protection hostile environment claim on the basis of legislative immunity.

### B.  State Law Claims

Horne has asserted state law claims against Pugh and against the County Commission. Horne has clarified in her brief that she only contends that the County Defendants can be held liable for the torts of outrageous conduct, invasion of privacy, and breach of contract.  See Plaintiff's Brief at pages 84, 87, and 89.  In addition to these claims, a defamation and assault claim are brought against Pugh individually.  The court will address first the claims asserted against Pugh individually.

### 1.  State Law Claims Against Pugh

Pugh has argued that as a County Commissioner he is not amenable to suit for violations of Alabama tort law.  Pugh has cited Smitherman v. Marshall County Commission, 746 So. 2d 1001 (Ala. 2001).  Because this was an argument which appeared to have been raised for the first time in Pugh's reply brief, the court gave Horne additional time in which to address this argument.

In Smitherman, the court stated as follows:

We first consider the trial court's ruling that the county commissioners and the county engineer are not amenable to suit in their individual capacities. The trial

48

court relied on Cook v. St. Clair County, 384 So.2d 1 (Ala.1980), in which this Court held: "Counties are amenable to suit in tort under Code of Alabama, 1975, § 11-1-2. Because counties, as bodies corporate, act through their governing bodies, the county [commissions, the] commissioners likewise are subject to suit in tort, not in their individual capacities but only in their official capacities." 384 So.2d at 7 (opinion on application for rehearing). It is therefore clear that the summary judgment was properly entered for the commissioners as to the claims against them in their individual capacities.

Smitherman v. Marshall County Com'n, 746 So.2d 1001, 1004 (Ala. 1999).

Horne argues that in cases like Smitherman and Cook, the actions at issue were negligent failure to maintain county property properly, so that those cases are distinguishable. Of course, Horne overlooks that wantonness claims were also asserted in Smitherman. Horne argues that it has always been the law that state actors can be individually sued for their actions and are not protected by discretionary function immunity if the individual acts willfully, maliciously, fraudulently, in bad faith, or beyond authority or under a mistaken interpretation of law. Horne does not cite, however, and the court is not aware of any, cases decided after Smitherman in which a state law tort claim was allowed to proceed as against a county commissioner in his or her individual capacity.[12]

The line of cases addressing this issue begin with Cook v. St. Clair County, 384 So. 2d 1 (Ala. 1980). In Cook, the court determined that a governmental immunity which had been applied to county commissions in the past would no longer be applied. Id. at 5. In this context, therefore, the court stated that county commissioners could be sued in their official, but not individual capacities. Id. On rehearing, the Cook court again stated that "commissioners likewise are subject to suit in tort, not in their individual capacities but only in their official

---

[12] Roden v. Wright, 646 So.2d 605 (Ala. 1994) was decided before Smitherman and does not address this issue.

capacities," and followed that statement with the statement that governmental immunity is no longer available in suits. Cook, 384 So. 2d at 7.

If there were no further interpretation of the Cook holding by the Alabama Supreme Court, this court might be inclined to agree with Horne that individual commissioners may be sued irrespective of principles of governmental immunity, and that such suits are governed by principles of discretionary function immunity. The Alabama Supreme Court has, however, spoken further on the issue. In Smitherman, claims for negligence and wantonness were asserted against county commissioners. The trial judge granted summary judgment, citing Cook, and stating that the commissioners in their individual capacities "cannot be sued in tort." Smitherman, 746 So. 2d at 1003. As quoted above, the Alabama Supreme Court stated that "summary judgment was properly entered for the commissioners as to the claims against them in their individual capacities." Id. at 1004. The fact that a wantonness claim was asserted precludes this court from merely assuming that the Alabama Supreme Court did not address whether claims could be asserted against the individuals because it was obvious that discretionary function immunity applied. In addition, although Horne tries to distinguish the facts of Cook and Smitherman as being duties of the county, not the individual commissioner, the court cannot conclude that the broad holding in Smitherman is limited to those facts.[13] This court is bound to

---

[13] If the fact that a county duty was involved had been dispositive, the commissioner would not have owed the plaintiff any duty and there would have been no need to find that commissioners are not amenable to suit.

read <u>Smitherman</u> as holding that no tort claim can be asserted against county commissioners in their individual capacities because they are not subject to suit in tort.[14]

In view of this precedent of the Alabama Supreme Court, summary judgment is due to be GRANTED as to all of the state law claims brought against Pugh.[15]

### 2.  State Law Claims Against the County Defendants

In large part, the County Defendants have adopted Pugh's arguments with respect to the state law claims, at least to the extent that liability for the County Defendants is predicated on Pugh's actions. Therefore, the court will consider arguments raised both by the County Defendants and Pugh in evaluating those claims.

### a.  Outrageous Conduct

---

[14] Whether this is the interpretation of <u>Cook</u> that this court would have made had <u>Smitherman</u> not been decided, or whether the Alabama Supreme Court might clarify this interpretation of <u>Cook</u> in the future is not for this court to consider under <u>Erie R.R. Co. v. Tompkins,</u> 304 U.S. 64 (1938).

[15]  Pugh moves to substitute a new reply brief which omits arguments related to claims against him in his official capacity based on the contention that those claims have previously been dismissed.  This motion is unopposed. The previous dismissal of claims against Pugh in his official capacity appears to have been limited to federal claims. The court is not aware, however, of any basis for holding Pugh liable in his official capacity under state law which would be separate and apart from liability on the part of the County Commission.  Therefore, the court will only address the state law claims which are asserted against the County Defendants as well as Pugh in his official capacity, and to the extent that state law official capacity claims brought only against Pugh but not the County Defendants remain in the case, summary judgment is due to be granted as to those claims.

A claim of outrageous conduct requires a showing that the actor intended to inflict emotional distress, the conduct was extreme and outrageous, and the distress was severe.  Moore v. Spiller Associated Furniture, Ind., 598 So. 2d 835 (Ala. 1992).  The Alabama Supreme Court has recognized three categories of such claims, including cases having to do with wrongful conduct in the context of family burials; cases where insurance agents employed heavy-handed, barbaric means to coerce a settlement; and cases involving egregious sexual harassment. Thomas v. BSE Indus. Contractors, Inc., 624 So.2d 1041, 1044 (Ala. 1993).

Although at various points in this case, Horne's claim of gender harassment has been characterized as a "sexual harassment" claim, the evidence presented, and Horne's arguments based on that evidence, have clarified that she contends that she has suffered a hostile work environment because of harassment based on her gender which may include instances of, but is not limited to, incidents which are sexual in nature. The court is not aware of any gender-based harassment cases by the Alabama Supreme Court in which there was a finding of outrageous conduct. See Saville v. Houston County Healthcare Authority, 852 F. Supp. 1512, 1541 (M.D. Ala. 1994) (granting summary judgment on an outrageous conduct claim where the plaintiff "cites no case--nor has the court found one upon independent review--in which the Alabama Supreme Court has held the type of sexual harassment alleged in this case to constitute outrageous conduct.").  Although it may be appropriate in another case to find that gender based harassment can constitute outrageous conduct, because the facts of this case are not within the categories of outrageous behavior identified by the Alabama Supreme Court, and otherwise fall far short of the kind of reprehensible situation which may constitute outrageous conduct, summary judgment is due to be GRANTED.

b.  Invasion of Privacy

A claim for invasion of privacy can be based on an intrusion upon the plaintiff's physical solicitude or seclusion, publicity which violates the ordinary decencies, putting the plaintiff in a false but not necessarily defamatory position in the public eye, and the appropriation of some element of the plaintiff's personality for a commercial use.  Phillips v. Smalley Maintenance Services, Inc., 435 So. 2d 705, 708 (Ala. 1983).  Horne claims that the Defendants are liable for the first three of the four possible types of invasion of privacy based on Pugh's actions.

With regard to the intrusion upon the plaintiff's physical solitude or seclusion Pugh argues that the facts of Alabama cases recognizing such a claim are more severe and more blatantly sexual than the facts in this case.  Under this theory, invasion of privacy consists of "the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." Scott v. Estes, 60 F. Supp. 2d 1260, 1275 (M.D. Ala. 1999).  The Alabama Supreme Court has found an invasion of privacy where the employer questioned a female employee two or three times a week for three months behind "locked doors" about the employee's sexual experiences, made coercive sexual advances, and the employee suffered severe mental trauma. Phillips, 435 So. 2d at 706-08.  In another case, the court found that there was no invasion of privacy where a president of the company told a female employee about an affair that he had, asked the employee to have dinner and to be available when he was in town, tried to kiss the employee, engaged in innuendo, touched her arm, and tried to have her fired.  See McIsaac v. WZEW-FM Corp., 495 So. 2d 649 (Ala. 1996). This court concludes that the facts in this case are not sufficiently severe and sufficiently of a sexual nature, when compared to the facts of cases decided by the Alabama Supreme Court

53

which have recognized an invasion of privacy claim, to rise to the level of a wrongful invasion of privacy claim and that summary judgment is due to be GRANTED as to this claim.  See Durham v. Philippou, 968 F. Supp. 648, 661 (M.D. Ala. 1997).

Under a claim of invasion of privacy based on a theory of publicity which violates the ordinary decencies, liability occurs only when the matter publicized is (i) highly offensive to a reasonable person, and (ii) not of legitimate concern to the public. Grimsley v. Guccione, 703 F. Supp. 903, 910 (M.D. Ala. 1988).

Pugh asserts two privileges: the privilege regarding publishing information concerning public figures, and the privilege regarding publishing information of legitimate public interest. Horne has not advanced an argument specific to this type of invasion of privacy, other than to state that telling members of the public and other commissioners that she had affairs with married men constitutes invasion of privacy under three theories.

The privileges asserted by Pugh are derived from the First Amendment to the United States Constitution.  See Campbell v. Seabury Press, 614 F.2d 395, 396 (5th Cir. 1980). Accordingly, it appears to be appropriate to examine the application of these privileges under the analysis applied to defamation claims where a First Amendment privilege is asserted.

Horne concedes that she is a public figure and as such, to prevail on a defamation claim, she must show that the defendant had actual knowledge of the falsity of the defamatory statement with reckless disregard for its truth or falsity.  See Mead Corp. v. Hicks, 448 So. 2d 308, 311 (Ala. 1984).  A defendant acts with "reckless disregard" if he "entertained serious doubts as to the truth" or acted with a high degree of awareness of its probable falsity.  Smith v. Huntsville Times Co., Inc., 888 So. 2d 492, 499 -500 (Ala. 2004) (citations omitted). "The actual

malice standard is subjective; the plaintiff must prove that the defendant actually entertained a serious doubt." Id.

Horne states that Pugh constantly spread rumors about her that she was having affairs, sleeping with married men, and involved with the "Piggly Wiggly man." Horne states that there is evidence that these statements were false and that Pugh knew they were false. Pugh responds that Horne admitted that she was dating a married man. Horne's testimony, however, was that she was in a dating relationship with a man who was separated from his wife, but that this relationship did not involve sexual relations. Pugh testifies in his affidavit that James McGill told him that he had slept with Horne while she was County Administrator. Pugh Affidavit at ¶ 11. Horne states that McGill denies making such statements. Horne has not cited any evidence to this effect, however. The court has examined the listed evidence submitted by Horne and does not see a reference to any affidavit of declaration by McGill and, therefore, is not aware of any evidence which would create a question of fact as to whether McGill made the statement to Pugh that McGill, a married man, was having a sexual relationship with Horne while Horne was County Administrator.[16] Horne further has not offered any proof to show that Pugh subjectively believed the rumors he spread about Horne having affairs to be false. Therefore, the court concludes that the privilege applies, and that summary judgment is due to be GRANTED as to this aspect of the invasion of privacy claim.

To establish false light invasion of privacy, a plaintiff must show (a) the false light in which the other was placed would be highly offensive to a reasonable person, and

_____

[16] Horne has not challenged the admissibility of Pugh's statement, presumably because it is definitionally not hearsay, having been offered to prove that Pugh was told this statement as support that Pugh subjectively believed in the truth of the statement.

(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.  Swanson v. Civil Air Patrol, 37 F. Supp. 2d 1312, 1332 (M.D. Ala. 1998).

As stated above, Pugh has offered evidence that McGill made the statement to Pugh that McGill, a married man, was having a sexual relationship with Horne while Horne was County Administrator.  Horne has not offered any proof to show that Pugh subjectively believed the rumors he spread about Horne having affairs to be false, or acted in reckless disregard of their falsity.  Consequently, the court concludes that summary judgment is due to be GRANTED as to the County Defendants as to this claim.

c.  Breach of Contract

The County Defendants argue that Horne's breach of contract claim is not supported by the contract.  Horne's argument is that the employment contract created a special relationship whereby the employer undertook to protect the employee from third parties.

In ruling on Motions to Dismiss earlier filed in this case, this court recognized that the allegation of a breach of an implied contract to protect can state a valid claim.  See Carter v. Calhoun County Board of Education, 345 So. 2d 1351 (Ala. 1977).  In opposing a Motion for Summary Judgment, however, Horne must go beyond mere allegation.  Horne has merely pointed to her employment contract and the County's policy handbook in support of her claim.  Horne also has cited to Steiger v. Huntsville City Bd. of Educ., 653 So. 2d 975, 978 (Ala. 1995).  She states that the employment contract she entered into creates a special relationship and that the County handbook states that her workplace should be free from unlawful harassment.  The case upon which Horne relies, however, also involved a policy statement by the employer to a

56

teacher that safe buildings would be maintained, but even that was not sufficient to establish

contractual liability.  Id. at 977.  The Alabama Supreme Court stated that an implied contract

must have the same elements that an express contract has.  Id. at 978.  Horne has not presented

evidence as to the elements of contract formation as to an implied contract to protect her from

harassment.  Accordingly, summary judgment is due to be GRANTED as to this aspect of her

claim.

Horne also argues that the hiring of an assistant by the Commission without her input

breached her contract.  She "alleges," see Plaintiff's Brief in Response at page 90, that the

provision in her contract that her duties include all additional duties commonly discharged by the

Russell County Administrator applies to the hiring of an assistant.

The County Defendants contend that there is no evidence that the County Defendants

were contractually obligated to let her hire Commission office employees.  They also point to

Horne's Declaration in which she states that the "Russell County Commission has the authority

to hire and fire each and every one of the 200 plus Russell County employees."  Horne

Declaration at ¶ 9.  The court agrees based on the evidence which has been presented to it that

summary judgment is due to be GRANTED as to this aspect of the breach of contract claim.


## V.  CONCLUSION

For the reasons discussed, it is hereby ORDERED as follows:

1.  The Motion to Strike (Doc. #159) and Renewed Motion to Strike (Doc. #176) are

GRANTED in part and DENIED in part, as discussed above.  Any aspects of the Motions to

Strike which are directed at evidence which was not specifically discussed as having been considered by the court are DENIED as moot.

2.  The Motion for Leave to File a Corrected and Amended Reply Brief (Doc. #171) is GRANTED, although the court has only considered the chart included within the Amended Reply Brief to the extent indicated above.

3.  The Motion for Summary Judgment filed by Pugh (Doc. #132) is DENIED as to the equal protection claim against Pugh in his individual capacity, and is GRANTED as to, and Judgment is entered in favor of Pugh and against the Plaintiff on, all other claims against Pugh.

4.  The Motion for Summary Judgment filed by the Russell County Commission and Russell County (Doc. # 124) is DENIED as to the Title VII hostile environment claim, and is GRANTED as to, and Judgment is entered as to the Russell County Commission and Russell County and against the Plaintiff on, all other claims.

The case will proceed against Pugh individually on the equal protection hostile environment claim and against Russell County and the Russell County Commission on the Title VII hostile environment claim.

Done this 15th day of July, 2005.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE