IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| LEANN HORNE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | (WO) |
| v. | ) | |
| | ) | CIVIL ACTION NO. 3:03cv592-A |
| | ) | |
| RUSSELL COUNTY COMMISSION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This cause is before the court on a Motion to Alter, Amend or Vacate (Doc. # ) filed by the Defendants, and a Motion in Limine (Doc. # ) filed by the Plaintiff.

In its previous Memorandum Opinion and Order on the pending Motions for Summary Judgment and Motion to Strike, this court examined the evidentiary objections raised to the Plaintiff's evidence offered in support of her hostile environment claim. The County Defendants have now objected to some of the court's evidentiary rulings. While the court agrees with the Plaintiff, Leann Horne ("Horne"), that some of the arguments now made could have been, but were not raised previously, since the admissibility of evidence is something which the court would likely have to rule on again in the context of a motion in limine, the court will examine these arguments.

Hostile Environment Evidence

First, the court notes that the County Defendants have raised no objection to the admissibility of the following evidentiary items:[1]

7. Tillman Pugh ("Pugh") stated that his wife will not let him go on trips with Horne because his wife is a jealous person. This evidence was considered as evidence of gender bias and as part of the creation of the hostile environment.

21. The portion of Horne's testimony that deals with Pugh passing out Horne's bankruptcy records at the County Commission meeting and Commissioner Gentry Lee's ("Lee") testimony that he thought this action was inappropriate.

31. Evidence that Horne cried after a March 5, 2003 Commission meeting and that she complained to Lee about how humiliated she felt.

The County Defendants have objected to all other evidence considered by the court. The court will address those objections in turn.

2. A statement by Gordon Cox which includes statements by Pugh to another.

Before turning to objections to any specific part of Gordon Cox's affidavit, the court notes that the County Defendants seem to argue that all of Gordon Cox's testimony is due to be stricken as hearsay. The court will address that contention first. The court noted in its original Memorandum Opinion and Order (Doc. #211) that Gordon Cox has stated under declaration of perjury that in Commission meetings he had witnessed, when Pugh was speaking to Horne he "seemed to always have a hostile tone and look on his face." Exhibit F. Regardless of any other

---

[1] The court has identified the evidence using the numbering system previously employed to identify the evidence.

testimony which may be subject to a hearsay objection, this statement by Cox is not hearsay, and is based on his personal knowledge.

The portion of Cox's affidavit which was made at issue by evidentiary item 2 was Cox's recounting of a conversation he had with Reverend Cedric Jones ("Jones") about Pugh. In the discussion of this item, the court also discussed a statement by Horne that Gordon Cox telephoned her and told her Pugh had told Cedric Jones, in effect, that Horne was a whore who provided sexual favors to keep her job. Horne Declaration at ¶ 29.

With respect to Cox's statement regarding what Jones told him, the court previously concluded that the statement was hearsay and not subject to any hearsay exception. The court stated that it would not consider this evidence in evaluating whether there was a hostile environment and would only consider the evidence to the extent that the statement is offered to show that Commissioners received reports about Pugh's conduct.

The County Defendants' objection, therefore, is not to Cox's statement, but to Horne's statement in her declaration that Cox made the statement to her. The court had concluded that because Cox was a commissioner, his statement to Horne was an admission. Because the court did not consider this evidence in evaluating the creation of the hostile environment, and only considered it to the extent that notice to the Commission was relevant, which, for reasons discussed below, is not an issue at this time, the court will no longer consider this evidence.

3. and 4. Arthur Sanders ("Sanders") testifies in a statement that on several occasions Pugh expressed to him that he was angry that Horne got the County Administrator position and that Pugh said, "we didn't need a woman up there in that position." Plaintiff's Exhibit E. Sanders also describes a particular incident when he and Pugh were driving in a county truck and

Pugh stated that "we didn't need a woman up there running things and I am not the reason she is up there." Id.

The County Defendants have argued that the court cannot consider these items because they do not comply with Rule 56(e). This is an argument raised previously, and raised in conjunction with other evidence as well.

There apparently is some confusion over the court's previous rulings on the Motions to Strike. At the time the court ruled on the Motions to Strike, it only addressed the contention that Horne had to present sworn statements, and that her statements were therefore insufficient under Rule 56. The court now understands the County Defendants to be arguing that even statements which comply with 28 U.S.C. § 1746 do not comply with Rule 56 if they do not explicitly state that the person giving the statement is competent to give that statement and that the information is within that person's personal knowledge. The court did not even address such an issue previously, thinking it obvious that where a person was testifying to something that occurred during a conversation in which they were participating, or to something they heard directly, they were competent to give the testimony, and the testimony was within that person's knowledge. It was not clear to the court until now that the County Defendants are arguing that without an affirmative statement that a witness is competent to give testimony, the entire statement must be stricken.[2] Although the County Defendants have cited some cases to support their position, those cases do not hold that there must be an explicit statement of competence. See e.g., Pace v.

---

[2] The County Defendants do acknowledge that the court can infer personnel knowledge from some of Arthur Sanders' statements.

Capobianco, 283 F.3d 1275, 1278 (11th Cir. 2002) (stating that a statement must be based on personal knowledge and not merely on information or belief to be admissible).

In ruling that an affidavit does not have to contain an explicit statement that it is based on personal knowledge to be admissible, the Fifth Circuit recently summarized other case law in this area as follows:

> the Fourth Circuit squarely rejected the argument that the "affidavits in the record are defective because they do not state that they are based on personal knowledge and do not affirmatively state that the affiants are competent to testify to the matters stated therein." The Ninth Circuit has also found it proper in the summary judgment context for district courts to rely on affidavits where the affiants' "personal knowledge and competence to testify are reasonably inferred from their positions and the nature of their participation in the matters to which they swore."

DIRECTV, Inc. v. Budden, No. 04-20751 2005 WL 1870781, *5 (5th Cir. Aug. 9, 2005) (footnotes omitted); see also Davis v. Valley Hospitality Services, LLC. 372 F. Supp. 2d 641, 653 (M.D. Ga. 2005) ("Personal knowledge and competence to testify may be inferred from the affidavits themselves . . . .").

The court is persuaded by this view of the requirements of Rule 56. The County Defendants' argument on this point is, therefore, unavailing. Sanders' statements, recited above, met the requirements of 28 U.S.C. § 1746, and his personal knowledge and competence can be inferred from the declaration, therefore, his statements were properly considered in ruling on the Motions for Summary Judgement as evidence that Pugh was motivated by gender animus in his actions toward Horne. As the court explained previously (Doc. #211 at pages 25-26), statements by Sanders which on their face are beyond his personal knowledge were not, and are not, considered by the court.

5.  Horne has stated in her declaration that Taylor Headley ("Headley") told her at a hospital task force meeting that Pugh had told him that Horne should not be Administrator because of her morals and character.  Horne Declaration at ¶ 26.  Headley states that Pugh said that "you may wonder why I have been fighting that woman–the administrator" and that Pugh proceeded to discuss Horne's "personal life" and "character."  Plaintiff's Exhibit O at ¶ 4.

The County Defendants first argue that Headley's statement does not include an affirmation of competency, but for the reasons discussed above, the court finds that argument unavailing as Headley's personal knowledge and competence can be inferred.  The County Defendants also state that this court should not have considered this statement as evidence of gender bias because it is permissible to identify a person by a pronoun in a gender-neutral way.

The evidence presented is not that Pugh identified Horne to Headley by a pronoun, or that he merely identified her gender in some way, but that he identified her as "that woman," before discussing her personal life and character as an explanation for why he had been fighting with her.  As the court previously discussed in connection with other evidence submitted by Horne, a statement not obviously based on a protected characteristic can be considered by the trier of fact if it is plausible that it was based on that characteristic.  See Rodgers v. Western-Southern Life Ins. Co., 12 F.3d 668, 676 (7th Cir. 1993).  The use of "that woman," in the context of the statement offered, and drawing all inferences in favor of the non-movant, is sufficient to allow a jury to decide whether Pugh was animated by gender bias.  In addition, the discussion of Horne's character may be viewed as an act of harassment on the basis of gender based not only on the statement by Pugh to Headley, but other evidence of gender-based animus as well.

6. The court considered testimony by Horne that Wayne Bell, a county employee, told Horne that Pugh referred to her as a "bitch" during a commission meeting in 1999. See Horne Dep. at page 422. For the first time in this case, the County Defendants contend that the admissions provision of the hearsay rule do not apply to this statement because it is not clear that Bell was an employee at the time he made the statement or that he was acting within the scope of his employment. Upon further consideration, the court is persuaded that the factual basis for concluding that Wayne Bell was an employee during the time in question is not sufficient to establish the admissibility of Horne's statement of what Wayne Bell told her. The court will not consider that evidence.

10. Mike Gall declared under penalty of perjury that after "the incident" between Pugh and Horne in her office, he asked Pugh what the problem with Horne was and Pugh told him that Horne was "just a bitch." Exhibit G.

The County Defendants have objected that the statement does not comply with Rule 56 because it does not contain a competency or personal knowledge averment. For the reasons discussed, that argument is unavailing, and this evidence was properly considered as evidence of Pugh's alleged gender-based animus.

13. Horne stated in her declaration that while Lee was chairman of the Commission he told her that Pugh told him Horne was not handling county business, but was off doing "woman things." Horne Declaration at ¶ 27. The objection raised by the County Defendants is to the admissibility of Lee's statement to Horne. This court originally concluded that Lee's statement to Horne were admissible as an admission. The County Defendants now argue for the first time that a county commissioner cannot be considered a party or an agent of a party in a suit against

the County Commission. The County Defendants argue that because the only individual Commissioner sued is Pugh, Lee's testimony is not admissible as an admission.

Horne argues that the Commission can only act through its Commissioners, and that an entire corporate body does not have to make a statement in order for there to be an admission. Horne has also advanced the argument that a plaintiff in a Title VII case should not be prevented from presenting evidence of harassment of which she was aware. It appears to the court, however, that the organizational structure of a County Commission is such that a distinction must be drawn between these facts and the facts of cases in which corporate representatives made statements. Cook v. St. Clair County, 384 So.2d 1, 5 (Ala.1980) (county commissioners in their official capacities can be sued independently from county commission). The Eleventh Circuit has noted that where the person relating the statement to the declarant independently testifies, statements may be permissible. See Zaben v. Air Products & Chemicals, Inc., 129 F.3d 1453, 1457 (11th Cir. 1997). Horne has not presented the court with a statement by Lee that he heard Pugh make the statement at issue, however. The court must conclude that because County Commissioners are not the same thing as corporate representatives or employees, and because there is no independent evidence that Pugh made the statement, Horne's testimony as to what Lee told her that Pugh said is not admissible.

15. and 24. Wanda Lamb has stated that she heard Dudley tell a member of the community that the County would be better off if it were not run by skirts. The County Defendants state that her statement does not comply with the requirements of Rule 56(e), but her declaration under penalty of perjury that the statements are true and correct complies with § 1746, and for the reasons discussed, her personal knowledge of a statement she heard and her

competency to testify to it can be inferred, and her statement does not require an affirmative statement as to personal knowledge or competency.

19. Curtis Lindsey testified that Pugh said that Horne "belongs or is going with the Piggly Wiggly man." Horne states in her declaration that Lindsey told her about the comment and that the comment implied an affair. Declaration at ¶ 28. The County Defendants have objected to his statement as not complying with Rule 56, but Lindsey's § 1746 declaration that he heard the statement from Pugh allows for the inference that he has personal knowledge that Pugh made the statement and is competent to testify to that fact.

20. Pugh and Dudley visited Commissioner Cattie Epps and discussed Horne's receiving child support. Dudley Dep. at pages 38-40. Dudley was recounting a conversation he witnessed in which Epps and Pugh were involved. Clearly, Pugh's statements would be admissions. The court agrees with the County Defendants' new argument, however, that Dudley's statement is not, since he is no longer a defendant in the case, and the court will not consider it. Given the fact that this evidence was not considered as part of the creation of a hostile environment, and the fact that there is other admissible evidence of Pugh's gender based animus, however, the court finds that not considering this evidence does not effect the analysis of the hostile environment claim in any significant way.

The County Defendants also argue that the evidence offered in this case which is less obviously based on gender is inadmissible.

8. Horne has stated that Pugh became angry with Horne before an August 2000 meeting, yelled at her and told her she is not supposed to think, but do as she is told. The County Defendants argue that this evidence is no longer admissible because all evidence of gender bias

9

is due to be stricken. As was discussed above, however, there is admissible evidence of gender bias on the part of Pugh. Accordingly, this argument is unavailing and this evidence is properly considered as part of the creation of a hostile environment.

     9. After the August 2000 meeting Pugh again yelled at Horne and asked her if she wanted to "go outside and finish this." He also told her "if it is the last thing I ever do, I will get rid of you." This evidence, taken in conjunction with evidence of gender bias, is properly considered.

     22. Horne states that after her contract was renewed, Pugh objected to her sitting at the center of the Commission table, as the previous County Administrator had. This evidence, taken in conjunction with evidence of gender bias, is properly considered as evidence of harassment.

     25. Horne presents evidence that at the July 2003 meeting during which she was placed on administrative leave, Dudley asked some members of the public if they were there "for the hanging." It can be inferred from Wanda Lamb's declaration under penalty of perjury that she heard Dudley ask a group of people gathered before the Commission meeting if they were there for the hanging, and asked Horne about it, that she had personal knowledge of that comment and is competent to testify to it. That evidence is properly considered as evidence of harassment.

     28. Horne cites to the statement of Gordon Cox wherein he identifies several aspects of Pugh's treatment of Horne. See Plaintiff's Exhibit F. The court has already discussed aspects of Gordon Cox's declaration under penalty of perjury. As the court stated previously, to the extent that Gordon Cox personally observed Pugh's questioning of Horne during meetings in a manner which Gordon Cox perceived to be hostile, the court considers that evidence as to the objective prong of the creation of a hostile environment. Cox also made the observation that Pugh did not

treat the other department heads, including men, in the same manner in which he treated Horne, which the court will consider as evidence of Pugh's bias.

29. Horne provides evidence that Cattie Epps testified in her deposition that voters called to complain that Horne was being talked down to during a Commission meeting. Epps Dep. at page 41. This court previously agreed that without evidence that Horne was aware of the complaints, the complaints themselves do not support that Horne subjectively suffered a hostile environment. The court concluded, however, that the fact that complaints were made about the treatment Horne was experiencing will be considered as objective evidence. See Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir. 1999) (stating that evaluation of severity and pervasiveness has both a subjective and an objective component). The County Defendants now argue that because these were subjective opinions of unnamed persons, the complaints are hearsay and not admissible.

The court is not considering the complaints for the truth of the matter asserted in them, that Pugh in fact talked down to Horne, but only that statements were made to complain about Pugh's treatment of Horne as evidence under an objective standard that persons other than Horne found Pugh's conduct objectionable.

30. Horne was not allowed to participate in the hiring of the new assistant administrator. She has pointed to Lee's testimony that this was the first time the County Commission had made a personnel decision without input from the department head. The County Defendants make the same argument in their new motion that they did previously, that Horne states in her affidavit that the Commission hired employees of other department heads. As the court stated before, this appears to a question of fact, and construing all questions in favor of the non-movant, the court

accepts the evidence as some evidence of departure from procedure. The County Defendants also state that Pugh said he would dignify Horne with an answer, rather than that he would not dignify her with an answer. Because one issue with respect to this exchange appears to hinge on the tone used, that court finds that the evidence is still relevant as evidence of Pugh's treatment of Horne. Finally, the County Defendants state that the hiring of a female assistant administrator cannot be evidence of gender bias. The evidence presented, however, is that Pugh and Dudley had bias against Horne as County Administrator because she was a woman. Their bias does not have to apply to all women in every position for them to have been motivated by Horne's gender in their treatment of her.

Analysis of Severity and Pervasiveness

The County Defendants contend that the only evidence which remains is evidence that Pugh said he could not go on trips with Horne because his wife is a jealous person, that he passed out Horne's bankruptcy records at a meeting, and that he objected to Horne sitting at the center of the commission table and, therefore, that she has not established that the conduct was severe and pervasive.

The evidence in this case is far more extensive than three incidents, however. As discussed above, the evidence is that Pugh referred to Horne as "that woman" and discussed Horne's personal life and character in a derogatory manner with a person who had business with the Commission; that Pugh said he could not go on trips with Horne because his wife is a jealous person; that Pugh said during a press conference with the Governor that Horne belongs, or is going, with the Piggly Wiggly man; that Pugh became angry with Horne before an August 2000 meeting and after the meeting asked her to go outside and "finish this," and told her he would get

12

rid of her; that Pugh passed out copies of Horne's bankruptcy records at a Commission meeting; that Pugh objected to Horne sitting at the center of the Commission table, where the previous male County Administrator had sat; that Dudley asked whether members of the public were there for "the hanging" when Horne was placed on administrative leave; that Arthur Sanders perceived Pugh's questioning of Horne during Commission meetings to be hostile; that voters called to complain about Pugh's treatment of Horne during a Commission meeting; and that Horne was not allowed to participate in a hiring decision. In addition to the above evidence, Pugh's conduct which is not obviously based on Horne's gender, or Dudley's conduct not obviously based on gender, has been considered in light of other evidence, including, but not limited to, Sanders' evidence that Pugh said the County did not need a woman in the County Administrator position, and Wanda Lamb's statement that Dudley told a member of the community that the County would be better off if it were not run by skirts.

The County Defendants have challenged the admissibility of some evidence which the court admitted only to establish the existence of gender-based animus. As discussed, even without that challenged evidence there is ample admissible evidence from which a reasonable jury could conclude that Pugh and Dudley acted based on Horne's gender. The only evidence which the court has determined should not be considered which it had previously considered as part of the creation of a hostile environment are statements made to Horne by Lee that Pugh said Horne was off doing woman things and by Bell to Horne that Pugh called Horne a bitch.

The removal from this court's consideration of those evidentiary items does not alter the conclusion that Horne has adequately established the elements of her claim. There is evidence that the conduct Horne experienced was frequent. Arthur Sanders has testified that Pugh

consistently treated Horne in a hostile manner during Commission meetings. Pughs' conduct and the comments made of which Horne was made aware also occurred outside of Commission meetings, however. With respect to the issue of severity of the conduct, some of Pugh's conduct, such as yelling at Horne and asking her to step outside, was severe. Other conduct, such as Pugh's stating that he would get rid of her and Dudley's reference to a "hanging" could also be perceived as threatening. Reports from a person who dealt with the Commission that Pugh was commenting on Horne's personal life and character, and that he and Horne were "fighting," could be viewed by a reasonable person as humiliating. The insinuation that Pugh's wife would have reason to be jealous if Horne and Pugh went on a trip could also be viewed as humiliating, as could Pugh's objections to Horne's seating at the Commission table, passing out her bankruptcy records at a Commission meeting, and hostile questioning during Commission meetings. The totality of the circumstances also allows for the inference that the conduct unreasonably interfered with Horne's job performance.

      Considering the totality of the circumstances, viewing the admissible evidence listed above in a light most favorable to Horne, and drawing all reasonable inferences in her favor, the court concludes that a question of fact has been raised as to both the subjective and objective components of the severe and pervasive analysis, that Horne has adequately established a hostile environment claim, and that the Motion to Alter or Amend is due to be DENIED as to the court's disposition of the Motion for Summary Judgment.[3]

---

[3] Defendant Pugh has not filed a post-judgment motion, but the court has independently considered whether removing the specified evidence of harassment from its analysis would alter its previous conclusion with regard to the § 1983 claim against Pugh and concludes that an equal protection claim has been established even with the removal of the evidence discussed.

Affirmative Defense

The County Defendants have also argued that this court should have granted summary judgment on the basis of the Faragher-Ellerth defense. The court asked for the County Defendants' response to Horne's motion in limine on this issue because it was not clear to the court that the Faragher-Ellerth defense had been properly raised.

The County Defendants state that the Faragher-Ellerth defense was properly raised in its Answer and in the Pre-Trial Order. The County Defendants point to the affirmative defense in their Answer that "[a]ny injury or damages suffered by the Plaintiff were the result of an independent intervening cause and not the result of any alleged actions or omissions by these Defendants," and state that because this is the first element of the Faragher-Ellerth defense, the defense was raised. The court does not agree that the statement pled by the County Defendants, even if it could be characterized as paraphrasing of an element of the Faragher-Ellerth defense, was sufficient to plead the affirmative defense in the Answer to the Third Amended Complaint.

Although the County Defendants advanced, for the first time, a Faragher-Ellerth defense in their contentions included in a proposed Pre-Trial Order, the Plaintiff did not agree that this was properly raised, and because of the procedural posture of this case, a Pre-Trial Order was not entered by this court. No Pre-Trial Order has, therefore, taken the place of the pleadings. Therefore, no Faragher-Ellerth defense has been raised in a responsive pleading, or a Pre-trial Order entered to take the place of the pleadings.

The County Defendants point out that the defense was raised in their Motion for Summary Judgment. Horne did not waive her objection to the raising of the defense by

15

responding to the motion, however, but instead objected to it in a motion in limine filed before the court ruled on the Motion for Summary Judgment.

The County Defendants also contend that Horne has not been prejudiced and knew that the defense had been raised, and that she has prejudiced the County Defendants by waiting until the time to amend the pleadings had passed before raising her objection. The County Defendants ask that they be given leave to amend their Answer to assert the defense.

If the County Defendants move to amend their Answer to the Third Amended Complaint once the interlocutory appeal taken by Tillman Pugh in this case has been completed, the question of relative prejudice will be addressed in ruling on that motion. At this point, the court grants the Motion in Limine as to the County Defendants' Faragher-Ellerth defense in this case and will not re-visit the applicability of that defense. If the County Defendants are ultimately allowed to amend the pleadings to assert the defense, the applicability of the defense will be an issue to be addressed by appropriate motion during the trial.

Accordingly, it is hereby ORDERED as follows:

1. The Motion to Alter or Amend (Doc. #213) is DENIED as to this court's conclusion in its previous Memorandum Opinion and Order (Doc. #211) that summary judgment is denied as to Horne's hostile environment claim.

2. The Motion to Alter or Amend (Doc. #213) is GRANTED to the limited extent that this court's Memorandum Opinion and Order (Doc. #211) is amended to strike and to remove from this court's analysis the following:

a. Horne's statement of what Cox told her Reverend Cedric Jones said about Tillman Pugh which the court previously admitted for the limited purpose of notice,

    b.  the statement in Horne's deposition that Pugh told Wayne Bell that Horne is a "bitch",

    c.  the statement in Horne's declaration that Commissioner Gentry Lee told her that Pugh said she was off "doing woman things",

    d.  testimony in Dudley's deposition regarding a conversation about Horne's child support which was previously admitted as evidence of bias.

    3.  The Motion to Alter or Amend (Doc. #213) is DENIED as to all other evidentiary rulings made in the previous Memorandum Opinion and Order (Doc. #211), for the reasons discussed in that Memorandum Opinion and in this Memorandum Opinion and Order.

    4.  The Plaintiff's Third Motion in Limine (Doc. # 201) is GRANTED.


Done this 29th day of August, 2005.


                                  /s/ W. Harold Albritton
                                  W. HAROLD ALBRITTON
                                  SENIOR UNITED STATES DISTRICT JUDGE